In the Matter of the ESTATE of Ada STICKLER, Deceased.

FIRST CHRISTIAN CHURCH OF DEXTER, a corporation, and W. E. Babb, Jr., Plaintiffs-Respondents,

v.

Adeline LEAZENBY, Defendant-Appellant.

No. 10198.

Missouri Court of Appeals, Springfield District.

May 26, 1977.

2. The transcript of appeal does not reflect the entry of a judgment as required by Rule 27.11, V.A.M.R.

Paul McGhee, James E. McGhee, McGhee & McGhee, Dexter, for defendant-appellant.

Powell, Ringer & Ringer, Dexter, for plaintiffs-respondents.

PER CURIAM.

May an absentee, who should have been joined as a party to a lawsuit but was not, emerge the victor? Under the unsavory facts here, this court answers the question in the affirmative.

This action was commenced by the filing of a "Petition to Discover Assets" (§ 473.340 V.A.M.S.) in the Probate Court of Stoddard County, Missouri. By agreement of the parties it was certified to the circuit court of that county for a nonjury trial. The petitioners, respondents here, were First Christian Church of Dexter, a corporation, ("the church"), and W. E. Babb, Jr. ("Babb"), both of whom were named as beneficiaries in the will of Ada Stickler ("Ada"), deceased. The executrix of the will of Ada Stickler is Adeline Leazenby ("Adeline"), who was also a beneficiary.

Ada's will was admitted to probate on September 13, 1973. The will, which was dated November 17, 1970, devised "the house and furnishings located at the corner of Vine and Poplar Streets, Dexter, Missouri," to the church, and "the house at 26 South Hickory, Dexter, Missouri," to Babb. When the will was executed Ada owned 225 shares of stock in the Citizens Bank of Dexter. The will provided that one-half of that stock was given to the church and the other half to Nellie Babb. Nellie Babb is the mother of Babb and the latter is the assignee of Nellie's interest.

On March 27, 1973, Ada, who was 91 when she died the following August 19, executed a power of attorney, broad in scope, appointing Adeline as her attorney in fact. This instrument was prepared by an attorney in Kenosha, Wisconsin, where Ada was temporarily residing. Adeline was present when the attorney drew the document, although Ada was not.

On March 29, 1973, Adeline, using the power of attorney, obtained access to Ada's safety deposit box in the Citizens Bank of Dexter and removed from it the 225 shares of the bank stock. Adeline sold 50 shares to Margaret Rendleman and 175 shares to Ray Rainey for a price of $105 per share, admittedly a reasonable value, and received for the stock $23,625. Adeline deposited the $23,625 in her own account in a savings and loan institution in Dexter.

On April 17, 1973, Adeline, using the power of attorney, sold the two houses, left under the will to the church and Babb respectively, to Claude Arnold and his wife for $11,000 from which a commission of $1,000 was paid to real estate agent Willis Conner. Conner testified that the church

property was sold for $6,000 and the Babb property for $5,000, their respective reasonable values, and that Arnold paid for the two tracts with one $11,000 check. Adeline deposited the $10,000 in her own account at a savings and loan institution in Dexter.

On April 4, 1973, Ada wrote a letter to Nellie Babb in which Ada said, "I think Adeline has tricked me out of all my estate."[1]

According to the inventory filed by Adeline in the probate court, Ada's estate consisted only of seven government bonds having a total value of $7,850.40.

The trial court made certain findings of fact including: "[Adeline] has not accounted for the proceeds . . . from the sales of said bank stock and real estate of Ada Stickler and such proceeds are not included in the inventory filed in Ada Stickler's estate as assets of said estate; in selling and disposing of the aforesaid property of Ada Stickler, the said Adeline Leazenby was acting in her own behalf and not on behalf of Ada Stickler and by her said acts the devises in the will of Ada Stickler to the First Christian Church of Dexter, Missouri, W. E. Babb, Jr. and Nellie Babb have not been and are not adeemed, and the said First Christian Church of Dexter, Missouri, and W. E. Babb, Jr. are the owners of and

entitled to the value of the proceeds from the sales and disposition of the 225 shares of stock in the Citizens Bank of Dexter and the two tracts of real estate located in Dexter, Missouri, together with interest thereon . . . ."

The court entered judgment in favor of the church and against Adeline in the amount of $17,812.50, together with interest thereon "since October 1, 1973" (the date the inventory was filed in Ada's estate). Exclusive of interest, the amount of the judgment in favor of the church was the sum of $11,812.50 (one-half of the value of the bank stock) and $6,000 (the value of the real estate devised to the church.) The court also entered judgment in favor of Babb and against Adeline in the amount of $16,812.50, together with interest thereon since October 1, 1973. Exclusive of interest, the amount of the judgment in favor of Babb was the sum of $11,812.50 (one-half of the value of the bank stock) and $5,000 (the value of the real estate devised to Babb).

Adeline appeals.

Section 473.340, which governs the procedure for discovery of assets, was enacted in its present form in 1973. Under the former procedure the action was initiated by the filing of an affidavit alleging that a person

---

1. The evidence included the following transactions not specifically encompassed by the petitions but considered by the trial court as bearing on Adeline's motives:

 On March 29, 1973, Adeline, using the power of attorney, withdrew $14,899.28 from Ada's account in Citizens Bank at Dexter, leaving a balance in that account of $72 which Adeline withdrew on April 2, 1973. Also on March 29, 1973, Adeline cashed a $7,000 cashier's check drawn on the First National Bank of Kenosha, Wisconsin. This check had been issued in payment of a certificate of deposit owned by Ada. Of the $7,000 Adeline deposited $5,000 in Adeline's personal account in the Citizens Bank of Dexter. The $2,000 plus the $14,899.28 withdrawn from Ada's account were used by Adeline to purchase a bank money order in the amount of $16,899.28 payable to Grace Powell. It was Adeline's testimony that neither she nor Ada "owed Grace anything." Adeline said that she gave the money order to Grace because Grace "fell in love with Dexter and decided to move here and I let Grace have the money to buy a house until Grace could sell her house and pay me back." Adeline also testified that

Grace decided not to buy a house in Dexter and "in a short time" Adeline got back from Grace a cashier's check for the same amount.

 On April 16, 1973, Adeline, using the power of attorney, executed a deed, on behalf of Ada, conveying a farm to Eloise LaRue. The farm, under the will, had been devised to Adeline subject to a restraint on alienation, the validity of which need not be considered. This deed was recorded at 8:40 a.m. on April 17, 1973. On the latter date Eloise LaRue executed a warranty deed conveying the farm to Adeline. Both deeds were prepared by the same attorney in Dexter. Eloise LaRue testified that she did not give or receive any consideration for having been a party to either conveyance. According to Eloise, "Adeline took me to the lawyer, Adeline talked to the lawyer first," and then the lawyer talked to Eloise. The lawyer said "that Adeline had a power of attorney and it was all legal—it would not involve me, that it was in Adeline's name anyway and she was just transferring the name."

was withholding an asset of the decedent. The court could cite the withholder to appear before it and if the withholder did not admit the claim contained in the affidavit, the former procedure required that he be examined under oath and that he answer interrogatories. The issues were made up by the interrogatories and the answers thereto.

Under present § 473.340 the proceeding is instituted by the filing of a verified petition in the probate court in which the estate is pending. The petition may be filed by any executor, administrator, creditor, beneficiary or other person who claims an interest in "personal property [2] which is claimed to be an asset of [the] estate or which is claimed should be an asset of [the] estate." The petition must describe the property "if known" and must allege the nature of the interest of the petitioner and the fact that "title or possession of the property, or both, are being adversely withheld or claimed." Section 473.340, subsec. 2, provides, in part, "Service of summons, petition and answer thereto together with all subsequent proceedings shall be governed by the Missouri Rules of Civil Procedure." It should be noted that the issues are now made up by the petition and the answer. In this respect the present procedure differs from the former in that under the latter they were made up by the interrogatories and the answers. There is now no *requirement* that interrogatories be filed and answered.

In this case the church and Babb filed separate verified petitions. The church's petition specifically described the real estate and the bank stock left to it under Ada's will. It alleged that Adeline, acting under the power of attorney, had sold these assets but had done so for her individual use and benefit and not for the use and benefit of Ada. It further alleged that the proceeds from the sales were being withheld by Adeline and were being claimed by her. The petition also alleged that the described property, or its value, should be delivered "to the executrix of the estate of Ada Stickler and included in the inventory." The Babb petition was essentially the same except that it described the land which Ada's will left to Babb and the bank stock which it left to Babb's assignor.

It is important to note that each petition named, as the sole party defendant, Adeline Leazenby; that is, she was sued only in her individual capacity and not in her capacity as executrix of Ada's will. Section 473.340, subsec. 4, provides, in part, "The court shall order the joinder of the personal representative of the estate if he is not named as a party." The failure to comply with that mandate has rendered the disposition of this appeal needlessly complicated.

It should be observed that neither the church nor Babb by their respective petitions sought a judgment in favor of themselves. Each petition, limited as it was to the assets (or the proceeds of the sale of same) in which the petitioner was interested, sought the inclusion of same in the inventory of Ada's estate.

Adeline's answer to each petition consisted essentially of a general denial.

Thus the basic inquiry before the court was whether or not, under the evidence, the property described in the petitions were assets of Ada's estate. It was not incumbent upon the court, under the pleadings or under the statute, to determine whether or not the church or Babb or both would be entitled to some or all of those assets at the time the estate was ordered to be distributed by the probate court.

Under § 473.340, subsec. 3, if the court found that the disputed property were assets of Ada's estate, the court was under a duty to "direct the delivery or transfer of the title or possession, or both, of said property to the person or persons entitled thereto . . ." That person, in this case, would be the personal representative of Ada's estate.

Subsec. 3 further provides: "If the party found to have adversely withheld the title or possession, or both, of said property has

---

**2.** "Personal Property" includes interest in goods, money, choses in action, evidences of debt, shares of corporate stock and chattels real. § 472.010(5) and (25).

transferred or otherwise disposed of the same, the court shall render a money judgment for the value thereof with interest thereon from the date the property, or any interest therein, was adversely withheld. In addition to a judgment for title and possession, or either, or for the value thereof, the court may enter a judgment for all losses, expenses and damages sustained, if any, but not including attorney fees, if it finds that the property was wrongfully detained, transferred or otherwise disposed of."

Most of the evidence in this case was offered by petitioners. It included admissions which Adeline had made in answers to interrogatories propounded by petitioners and the contents of a stipulation as to certain facts, the stipulation having been signed by counsel for petitioners and counsel for Adeline.

All of the facts set forth above concerning the handling of Ada's assets and the proceeds of those which Adeline sold are supported by the evidence. Indeed most of them were admitted by Adeline *and none was denied.* During their case, petitioners called Adeline as a witness. After direct examination of Adeline by petitioners' counsel, Adeline's attorney elicited no testimony of significance. After petitioners rested their case, Adeline introduced no evidence.

It should be noted that Adeline admitted selling the property described in the two petitions and, except for the payment of a $1,000 commission to realtor Conner, deposited same in her personal account.

■ The matter of the nonjoinder of the personal representative of Ada's estate has not been raised by the parties to this appeal. That nonjoinder was and is a significant omission which requires discussion. However, neither Adeline nor petitioners may complain on appeal about the nonjoinder of Ada's personal representative, they having waived that right by failing to raise the question in the trial court. *Grundel v. Bank of Craig,* 515 S.W.2d 177, 180[4] (Mo. App.1974); *S‑‑‑‑‑ v. W‑‑‑‑‑,* 514 S.W.2d 848, 855[15] (Mo.App.1974); *Lamb v. N. Y.*

*Life Ins. Co.,* 377 S.W.2d 148, 150[4] (Mo. App.1964); *Bartlett v. DeGraffenreid,* 305 S.W.2d 906, 910[5, 6] (Mo.App.1957).

The central issue was whether the property described in the two petitions was owned by Ada at the time of her death, and thus should have been inventoried, or whether that property was owned by Adeline. Manifestly, Adeline's personal interest in that issue conflicted with the interest of Ada's personal representative. Unfortunately Adeline still serves in the latter capacity, there having been no direct attack upon her tenure by the filing of the removal proceeding contemplated by § 473.140.

In *Davis v. Roberts,* 206 Mo.App. 125, 226 S.W. 662 (1920) there was a direct proceeding to remove the defendant as an executor. The action was brought under the counterpart of what is now § 473.140. One of the beneficiaries of the estate charged that the executor was "unsuitable to execute the trust reposed in him" and "[had failed] to discharge his official duties" (language contained in the former statute on removal and still appearing in § 473.140) by failing to inventory a note. It was alleged that the note was an asset of the estate but the executor claimed personal ownership of it. At p. 664 the court said:

"[1–3] In a proceeding of this kind it was not necessary to show that the estate was the owner of the property, but only to show, as the court found, that there was a real and substantial controversy as to the ownership of the note and that there was reasonable and probable cause to believe that the note belonged to the estate. A finding of this kind shows that the position of the executor and the estate is entirely antagonistic and that he ought not to be permitted to serve longer. It is contrary to the policy of the law to permit an executor who stands in a position somewhat like that of a trustee to assume a position where his interest conflicts with that of the estate, for it is contrary to general experience that one is able to fairly represent his own interest and at the same time represent those of another which are in conflict with his own. When a situation appears such as we have

in this case it is the positive duty of the court to remove the executor under the provisions of section 50, R.S.1909, on the ground that he has become 'incapable or unsuitable to execute the trust reposed in him.' As we have already stated, it is not necessary to show, as was undoubtedly done in this case, that the property in controversy belongs to the estate." (Citing many authorities)

See *Estate of Luyties v. Scudder*, 432 S.W.2d 210 (Mo.1968) at p. 215 where *Davis* is cited with approval and some of the foregoing language is set forth. See also *Moffett v. Commerce Trust Co.*, 283 S.W.2d 591, 597[7] (Mo.1955); *Arrington v. McCluer*, 326 Mo. 1011, 34 S.W.2d 67, 71[2, 3] (1930); *State v. Thym*, 282 S.W.2d 178, 187[19, 20] (Mo.App.1955).

█ It is clear that if a removal proceeding had been instituted against Adeline under § 473.140, a showing of the pendency of the instant controversy, coupled with the evidence in this record (and *Davis* contains language to the effect that something short of the latter would be sufficient), would have necessitated Adeline's removal as Ada's executrix. Unfortunately that was not done.

Authorities exist to the effect that this court may not, in this proceeding, unseat Adeline. "After an executor or administrator has been appointed even though a statutory cause for removal occurs, the removal is not automatic. The authority, duty and status of the person so appointed is terminated only upon the entry of an order of removal by a court with jurisdiction of the proceeding. The probate court has exclusive jurisdiction of a proceeding to remove an executor or administrator for a cause defined by statute." Maus, Missouri Practice, Probate Law and Practice, Vol. 4, § 1513, p. 632. To similar effect see 33 C.J.S. Executors and Administrators § 91b–91c, pp. 1039–1040; see also *In Re Boeving's Estate*, 388 S.W.2d 40, 52[17–20] (Mo.App. 1965) and 47 A.L.R.2d, § 6 p. 307 at p. 312.

In *Moffett v. Commerce Trust Co.*, supra, 283 S.W.2d at p. 597[7] the court pointed out that, at least under some circumstances, conflicting interests may not "absolutely disqualify" a personal representative although they may constitute a ground for refusal to appoint or for removal.

█ If this court in this proceeding possessed the authority to unseat Adeline, it would be exercised. But authorities previously cited hold that removal may be accomplished only in a direct proceeding, one in which that relief is specifically sought, and only after giving the personal representative due notice and the opportunity to be heard on that issue. Here notice of the nature of this controversy has been given and Adeline had the opportunity, but essentially declined it, to offer evidence in opposition to the petitions. Unquestionably her removal should now be sought in the appropriate proceeding under § 473.140 unless she has the prudence to resign.

Now to be considered are Adeline's three "points relied upon."

█ Her first point is that the will provisions in favor of the church and Babb were "adeemed" and thus the court erred in entering judgment in favor of petitioners. It is true that a victory for petitioners should have resulted in a judgment in favor of the personal representative, as the petitions requested, and not in favor of petitioners themselves. At the time of the trial the estate was still in the process of administration and the circuit court possessed no authority to enter in favor of petitioners what was in effect an order of distribution. See *Cook v. McCoy*, 118 S.W.2d 1043, 1046[1–6] (Mo.App.1938); *State v. Lamm*, 216 S.W. 332, 333[4] (Mo.App.1919); § 473.617 V.A. M.S. Similarly the question of whether there had been an ademption[3] was of no concern to the court in this proceeding. It was premature to inquire into that question, one perhaps to be pursued when the distribution of the assets is ordered in the probate court.

---

**3.** For a discussion of Missouri law pertaining to "ademption" see Maus, Missouri Practice, Probate Law and Practice, § 1467, p. 597.

But Adeline can derive no comfort from the foregoing. The fact that petitioners may not yet be entitled to distribution does not mean that the assets sought to be discovered should not be taken from Adeline and placed in Ada's estate where they belong.

 Still under her first point, Adeline claims that the finding of the trial court "that [Adeline] was acting in her own behalf in selling the property" was not supported by the evidence. The issue in this proceeding was *not* whether Adeline exceeded her authority in using the power of attorney to sell the houses and the bank stock.[4] The issue was whether Adeline converted to her own purposes the proceeds which she admittedly received. As previously stated, Adeline's answer consisted solely of a general denial and made no direct claim to ownership of the disputed property. Her evidence was similarly devoid of any explanation for her retention of the proceeds.[5]

"It is the general rule that the agent is bound to account to his principal for all money and property which may come into his hands by virtue of the agency. And, further, when the principal has shown the existence of such a relation and the receipt of money or property by the agent, the burden of showing that he made a proper disposition of it rests upon the agent. 1 Mechem on Agency (2d Ed.) §§ 1327, 1344; *Carder v. Primm*, 52 Mo.App. 102." *O'Day v. Annex Realty Co.*, 236 S.W. 22, 24[2] (Mo.1921).

"Unless otherwise agreed, an agent receiving or holding things on behalf of the principal is subject to a duty to the principal not to receive or deal with them so that they will appear to be his own, and not so to mingle them with his own things as to destroy their identity." Restatement, Agency 2d, § 398, p. 228 (1958).

Comment b of § 398 reads:

"b. Money received. Ordinarily, an agent who receives money on account of the principal cannot properly place it to his own credit in a bank, where it may be subject to a set-off or lien by the bank, or so mingle it with his own that there may be difficulty in tracing it. Unless so understood, an agent receiving money either as a trustee or a bailee is not privileged to change the right of the principal in the specific moneys received, or his right against a bank if they are deposited, into a debt claim against himself. The principal's trust is in the honesty and not necessarily in the solvency of the agent. See § 427 and also the Restatement of Trusts, §§ 179, 180."

See also *Brown v. Maguire's Real Estate Agency*, 343 Mo. 336, 121 S.W.2d 754, 757[5–9] (1938).

 As stated previously, Adeline deposited the proceeds of the sales in her personal account in a savings and loan institution. She failed to inventory those proceeds. By that conduct Adeline committed conversion, even though, which need not be decided, her initial receipt of the proceeds may have been lawful. 3 C.J.S. Agency § 280, p. 57.

Also under her first point Adeline claims that the trial court erred in granting relief because Ada "ratified" the sales of the bank stock and the two houses. This contention has no factual support. There is no evidence that Ada knew that Adeline sold the houses or the bank stock. More significantly there is no evidence that Ada ratified or even knew of the conduct of Adeline in treating the proceeds as her own.

 Adeline's second point is that the trial court erred in excluding evidence tendered by Adeline to the effect that while

---

4. In this proceeding there was no attack upon Ada's competency to execute the power of attorney or the validity of the instrument.

5. If Adeline claimed ownership of the property as a gift from Ada, the burden was upon Adeline to establish such fact. *In re Petersen's Estate*, 295 S.W.2d 144, 150[8–10] (Mo.1956); *In Re Kaimann's Estate*, 360 Mo. 544, 229 S.W.2d 527, 529[6] (1950); *Roethemeier v. Veith*, 334 Mo. 1030, 69 S.W.2d 930, 933[2–4] (1934); *Tygard v. Falor*, 163 Mo. 234, 63 S.W. 672 (1901) (a case most similar on its facts); *Newell v. Edom*, 242 S.W. 701, 702[2] (Mo.App. 1922).

Ada was "in a hospital in Kenosha, Wisconsin, during the latter part of March 1973, [Ada] instructed [Adeline] to dispose of the two houses which were located in the city of Dexter and also to dispose of the shares of stock that she had in the Citizens Bank, both by selling them."

Adeline's offer of such evidence underlines the conflict which existed between her interest and the interest of the estate. It is unnecessary to consider whether or not the offered evidence could have been excluded on the basis of the Dead Man's Statute, § 491.010, if the estate had been separately represented and its representative had interposed such an objection.[6] It is also unnecessary to decide whether the proffered evidence was vulnerable to other objections.

The offered evidence could not have had a material effect upon the outcome of this proceeding. Even if Ada specifically authorized the sale of the bank stock and the two houses, there was nothing in the offer or in Adeline's other evidence to show that Adeline's retention of the proceeds and the depositing of them in her personal account were accomplished with Ada's knowledge and consent.

It is unnecessary to decide whether or not the trial court erred in refusing to receive the offered testimony for the reason that the error, if any, did not materially affect the merits of this action and thus constitutes no ground for reversal. Rule 84.13(b) V.A.M.R.

■ Adeline's third point is that the trial court erred "in not giving credit to [Adeline] for the expenditure made by Adeline on behalf of Ada in the amount of $5,236.80; in not deducting the broker's fee of $1,000 from the proceeds of the sale of the real estate before computing the judgment for plaintiffs; and in awarding interest to plaintiffs from the date of the filing of the inventory."

At least one answer to the first prong of the third point is that there was no evidence that Adeline expended $5,236.80 for the benefit of Ada.[7] Whether or not such testimony, if offered, would properly have been a part of this proceeding need not be decided.

With respect to the real estate commission of $1,000 which Adeline paid realtor Conner out of the proceeds of the sale of the real estate, the trial court should not have included that item in its award. The *instant* record does not show that the sale of the real estate was improper or unauthorized. That issue was not explored and, in the absence of Ada's personal representative or possibly others, it should not have been. The amount of the instant judgment will be reduced by $1,000 but without prejudice to the right of the appropriate party to litigate that issue in a separate proceeding.

■ In challenging the award of interest Adeline argues that the trial court should not have awarded interest on the proceeds of the sales from the date of filing of the inventory, as it did, because, says Adeline, the petitioners were not entitled to receive the proceeds until final distribution was accomplished under § 473.617. The fallacy in this argument is that it is the personal representative of Ada's estate, not the petitioners, who is entitled to the proceeds and, under § 473.340, subsec. 3, inter-

**6.** See *Roethemeier v. Veith*, 334 Mo. 1030, 69 S.W.2d 930 (1934); *Carmody v. Carmody*, 266 Mo. 556, 181 S.W. 1148, 1151[3] (1916); *Tygard v. Falor*, 163 Mo. 234, 63 S.W. 672, 674 (1901); *Birdsong v. Estate of Ladwig*, 314 S.W.2d 471, 475 (Mo.App.1958); *Schwalbert v. Konert*, 230 Mo.App. 811, 76 S.W.2d 445, 451 (1934); *Davis v. Robb*, 10 S.W.2d 680 (Mo.App. 1928).

**7.** Adeline's brief, purporting to show a factual basis for the claim that she expended $5,236.80 for Ada, says that evidence is contained in Adeline's answer to Interrogatory 35. However, the answer to the interrogatory was not offered or received in evidence. Moreover, if Adeline *had* offered the interrogatory answer it may have proved unrewarding. "While the rules of evidence permit answers to interrogatories to be used against the party giving them, where such answers are self-serving they are not admissible on behalf of the party giving them." 23 Am.Jur.2d, Depositions and Discovery, § 292, p. 691. See 13 A.L.R.3d, § 5, pp. 1312, 1327.

See also *Carmody v. Carmody*, 266 Mo. 556, 181 S.W. 1148, 1151[3] (1916).

est thereon accrues "from the date the property, or any interest therein, was adversely withheld." The proceeds of the sale of the bank stock ($23,625) have been "adversely withheld" since the date of that sale and the deposit of the proceeds in Adeline's personal account (March 29, 1973). The net proceeds of the sale of the real estate ($10,000) have been "adversely withheld" since the date of that sale and the deposit of the proceeds in Adeline's personal account (April 17, 1973).

Other assets of Ada, not described in the two petitions and not ruled upon by the trial court in this proceeding, may well merit the attention of a successor personal representative and taxing authorities. The information contained in footnote 1 should be of interest to them.

█ The essential result of this appeal is that Adeline has lost it. The petitions were meritorious. It is not procedurally permissible to enter a judgment against Adeline individually and in favor of Adeline in her capacity as executrix. "Ordinarily, as appears in Actions, § 31, no action may be maintained in which one person is both plaintiff and defendant, even in different capacities; and, therefore, it is not competent for a personal representative acting in his representative capacity to sue himself in his individual capacity, or, acting in his individual capacity, to sue himself in his representative capacity." 34 C.J.S. Executors and Administrators § 689, p. 665.

The judgment is set aside and the cause is remanded with the following directions to the circuit court:

1. To appoint a suitable person to act as receiver for the estate of Ada Stickler, deceased, with respect to the proceeds of the judgment mentioned in paragraph 2 and to enter its order adding said receiver as a party to this action.

2. To enter judgment in this action in favor of said receiver and against Adeline Leazenby in a sum equal to the total of the following:

(a) $23,625, together with interest thereon at the rate of 6 percent per annum from March 29, 1973, to date of judgment, and

(b) $10,000, together with interest thereon at the rate of 6 percent per annum from April 17, 1973, to date of judgment, together with costs.

3. To include in the judgment a recital that it shall not impair the right of any person to challenge, in a separate proceeding, the propriety of the expenditure of $1,000 by Adeline Leazenby for the real estate commission of Willis Conner.

4. To instruct the receiver to take all steps necessary to collect the judgment and to place the proceeds on deposit at interest until they are transferred, under the supervision of the circuit court, to a duly appointed personal representative of said estate, said personal representative being someone other than Adeline Leazenby. Reasonable expenses incurred by the receiver, including a receiver's fee, may be allowed by the circuit court and taxed as costs.

5. To tax the costs of this appeal and subsequent proceedings in the circuit court against Adeline Leazenby, individually.

6. To order the clerk to file in the Probate Court of Stoddard County, Missouri, in Estate No. 12,243, a certified copy of the judgment entered in this action, together with a copy of this opinion.

In the event, at the time of entry of the judgment, a person other than Adeline Leazenby is the duly appointed representative of the estate of Ada Stickler, deceased, the appointment of the receiver need not be effected and the judgment shall be entered in favor of said personal representative.

It is so ordered.

All concur.