In the Matter of the ESTATE OF
Edgar A. LINSON, Deceased.

**Inez A. BALDWIN, Petitioner,**

v.

**James M. LINSON, Administrator of the Estate of Edgar A. Linson, Respondent.**

**No. WD 35542.**

Missouri Court of Appeals,
Western District.

March 19, 1985.

Motion For Rehearing and/or Transfer to Supreme Court Overruled and Denied April 30, 1985.

Donald L. Slyter, Kansas City, for petitioner.

Wm. J. Randall, Independence, for respondent.

Before TURNAGE, C.J., and MANFORD and KENNEDY, JJ.

TURNAGE, Chief Judge.

Inez Baldwin filed a claim against the Estate of Edgar A. Linson for services. The administrator of Edgar's estate filed an answer and counterclaim alleging that Inez had wrongfully converted to her own use a doll collection belonging to the estate,

and prayed for damages of $50,000 actual and $50,000 punitive. Inez failed to file any responsive pleading to the counter-claim, and the court entered an interlocutory judgment of liability and ordered a hearing on the question of damages.

After the hearing, the court entered judgment in favor of the estate on Inez's claim, and entered judgment in favor of the estate and against Inez on the counterclaim in the sum of $50,000 actual damages.[1]

Inez contends that the damages judgment is erroneous because there was no evidence that she took the dolls and there was no evidence to show an accurate description of the dolls or their market value. Affirmed.

Edgar's wife, Thelma, was a doll collector for many years prior to her death. In 1978, Edgar's sister, Inez, came from her home in California to live in the Linson home to assist because of Thelma's illness. There is no dispute that Thelma had a large collection of dolls, most of which were displayed in various rooms of the house and some of which were stored in the basement and in boxes under the bed. Close relatives estimated that the number of dolls was between 2,000 and 3,000. There was evidence that the doll collection was worth between $250,000 and $300,000 at Thelma's death.

There is no dispute that the doll collection remained intact after Thelma's death in February of 1979. Inez continued to live in the home with Edgar until his death on September 5, 1979. The evidence was that the doll collection was complete at Edgar's death.

A brother of Edgar and Inez, James, was appointed as the administrator of Edgar's estate. After Edgar's death, Inez was the sole occupant of Edgar's home until her son arrived, and thereafter those two were the only persons living in the home. On one occasion James was at the home and

observed Inez and her son packing dolls in boxes. James told them that no property should be removed from the home.

Robert Adams, an agent for Cartwright Van Lines, testified that he was called to Edgar's home on September 20, 1979, where he picked up twenty-three cartons that he was told contained dolls, doll chairs and doll tables. Adams presented the bill of lading and Ernest, Inez's son, signed the paper as the shipper. Adams asked Ernest what value he wanted to place on the shipment. Adams heard Ernest ask his mother what value she wanted to place on the shipment and Inez replied $50,000. Adams testified that the shipment went to Escondido, California. He further testified that the shipment was insured for $50,000 at a cost of $5 per $1,000 and that the shipper declares the value to be the same as the amount of the insurance.

Helen Nichols testified that she was Thelma's niece, and visited Thelma in her home about once a week for many years, and during Thelma's last illness she visited the home about every day. She testified about the doll collection and that it was in the home at the time of Edgar's death. She qualified as an expert concerning the value of the collection, and valued the collection at $250,000. Helen's daughter, Robin, also testified and qualified as an expert and valued the collection at $250,000 to $300,000.

Other witnesses testified that they saw Inez bring dolls up from the basement and pack them in boxes. Inez was quoted as having said that she was shipping the dolls to her home in California.[2]

Shortly after James had seen Inez and her son packing dolls and after he had told them to not remove any dolls from the house, James received a call stating that Inez and her son were gone. James went to Edgar's home and found the house locked and secured. He did not have a key to the house so he had a locksmith open the

---

1. The judgment was entered by the commissioner and approved by the circuit judge assigned to the probate division. Section 478.266, RSMo 1978.

2. Inez did not appear at the hearing and did not present any evidence on the question of damages.

door. When James went through the house he found everything in complete disorder and the doll collection gone.

Subsequently, Inez filed her claim for services and the estate filed its counterclaim. Inez does not appeal the denial of her claim, but only appeals from the judgment assessing damages against her for taking the dolls.

■ Inez contends that the evidence did not show the dolls belonged to Edgar's estate. She also makes a reference in her argument that conversion was not the proper remedy, but that a proceeding for discovery of assets should have been brought by the estate. None of these contentions were presented to the trial court by way of pleading, evidence, or argument. Inez waived those questions by failing to raise them in the trial court. *In re Estate of Stickler*, 551 S.W.2d 944, 949[1] (Mo. App.1977).

■ Inez next contends that there was evidence that several dolls were given away. There was testimony that a few dolls were given away but the evidence is undisputed that Inez shipped twenty-three cartons of dolls and doll furniture to California. Thus, the fact that a few dolls were given away does not destroy the evidence that Inez took the twenty-three cartons.

Inez finally contends that the evidence did not describe the doll collection, and that the value placed on the collection was only what witnesses had observed over a long period of time and did not refer to the value at the time Inez took the dolls.

The evidence described the doll collection in some detail and a number of pictures were introduced that showed various parts of the collection. There is no doubt the conversion alleged and proved was that of the doll collection and doll furniture.

The judgment of $50,000 actual damages was well within the evidence of value of $250,000 to $300,000. In addition, the sum of $50,000 coincides with the value Inez herself placed on the dolls which she had shipped to California.

The evidence to support a judgment for damages in favor of the estate must be based upon substantial evidence, which is more than speculation, guesswork, or conjecture. *Brown v. Meyer*, 580 S.W.2d 533, 536[10] (Mo.App.1979). Here, the evidence supporting the judgment can be found in the admission of Inez, the testimony of the van line agent, and the value which Inez placed on the items which she shipped to California. Certainly this meets the requirement of substantial evidence and excludes speculation, guesswork, or conjecture.

The judgment is affirmed.

All concur.