**In re Patrick Joseph LOMANTINI, Debtor.**

**Louis Payne, Plaintiff,**

v.

**Patrick Joseph Lomantini, Defendant.**

Bankruptcy No. 98–51336–172.
Adversary No. 99–4021–172.

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Aug. 3, 2000.

Robert A. Breidenbach, Riezman & Blitz, P.C., St. Louis, MO, for Plaintiff.

E. Rebecca Case, Stone, Leyton & Gershman, Clayton, MO, trustee.

Phillip H. Hamilton, Farrell, Hunter, Hamilton, et al., Godfrey, IL, for Debtor/Defendant.

## MEMORANDUM

JAMES J. BARTA, Bankruptcy Judge.

This matter is before the Court on the "Motion for Entry of Default Judgment" (Motion 10) filed by Louis Payne ("Plaintiff"), and the "Objection to Motion for Default Judgment and Motion to Vacate Entry of Default" (Motion 11) filed by Patrick Joseph Lomantini, Debtor ("Defendant").

This is a core proceeding pursuant to Section 157(b)(2)(I) of Title 28 of the United States Code. The Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. Sections 151, 157 and 1334, and Rule 9.01 of the Local Rules of the United States District Court for the Eastern District of Missouri.

The Plaintiff's motion will be granted in part and denied in part and the Defendant's motion will be granted in part and denied in part.

### Facts

The operative facts are not in dispute. (See, Exhibit 1 to File Document No. 10 and Affidavit of Defendant, Attached to File Document No. 16). The Plaintiff engaged the Defendant to sell a car to a third party, entrusting the Defendant with the car and its title and a power of attorney to permit the Defendant to conclude the sale. It was agreed that the Defendant was to receive $300.00 as payment and remit the remainder of the proceeds to the Plaintiff. Shortly after the agreement was made, the Defendant sold the car and received the sale proceeds in the amount of $92,000.00 in the form of a check made out to "L & L Enterprises", a d/b/a used by the Defendant. The Defendant did not turn over the proceeds to the Plaintiff as they had agreed. Instead, the Defendant took the check from the purchaser of the car to the purchaser's bank and obtained a cashier's check made out to L & L Enterprises. The Defendant then negotiated the cashier's check to Mungenast Lexis, St. Louis in payment for a previously purchased car for a customer other than the Plaintiff. Mungenast Lexis issued the Defendant a check for the difference, about $58,000.00, which the Defendant endorsed to DiSalvo Jeep to pay a previous debt owed by the Defendant in the amount of about $22,238.00. DiSalvo issued a check to the Defendant for the difference. The Defendant then endorsed the DiSalvo check over to Suntrup Ford to pay a previous debt of about $32,000.00. The remaining money is unaccounted for in the Defendant's affidavit.

When the Plaintiff demanded the proceeds of the sale of his car, the Defendant did not turn over the proceeds to the Plaintiff.

The Plaintiff filed suit against the Defendant in state court alleging breach of contract, fraud and conversion. On the eve of trial in state court, the Defendant filed for relief under Chapter 7. The Plaintiff then filed this adversary complaint to determine dischargeability and for a money judgment.

### The Complaint

The Plaintiff's amended complaint requested that judgment be entered for his actual damages and costs, alleged that punitive damages were warranted, and requested that the debt resulting from said judgment be found not dischargeable under 11 U.S.C. § 523(a)(2), (4), and (6) for false representation, breach of fiduciary duty, and willful and malicious injury (File Document No. 6). The Defendant appeared by Counsel at pre-trial hearings and was granted an extension of time to answer the Amended Complaint. No answer was filed within the extended time to answer. Before the extension of time to

answer expired, the Defendant filed a consent to the entry of default and a waiver of additional time to plead (File Document No. 7). The Clerk of the Court entered a default on March 19, 1999. Thereafter, the Plaintiff filed the pending motion for default judgment requesting judgment in the amount of $91,700.00, attorney fees and costs, and punitive damages in an amount equal to the actual damages (File Document No. 10).

The Defendant responded to the Plaintiff's motion for default judgment by filing a request that the Court set aside the default, allow him to file an answer, and allow him to proceed to defend (File Document No. 11). The Defendant objected to any award of punitive damages as being beyond the scope of the pleadings.

The Parties appeared by Counsel at a pretrial hearing and presented brief oral argument with respect to the Defendant's objection to the Plaintiff's motion for default judgment, and the Defendant's motion to vacate the entry of default. The Parties were given additional time to submit legal memoranda and thereafter the matter was taken under submission on the record as a whole.

### Setting Aside Default

■ The Defendant raised the prospect of a meritorious defense to the allegations under 11 U.S.C. § 523(a)(2)(A) as cause to set aside the entry of default. No meritorious defense as to Sections 523(a)(4) or (a)(6) has been suggested in this record. The determination of whether to set aside the entry of default is made under the "good cause shown" standard provided in Rule 55(c). The provisions of Rule 60(b), which applies when a default judgment has been entered, are not applicable here. Fed.R.Civ.P. 55(c), Fed. R. Bankr.P. 9024. Generally, in the Eighth Circuit there is a preference for a determination of disputed issues on the merits, and default judgments are not favored. *Marshall v. Boyd,* 658 F.2d 552, 554 (8th Cir.1981). However, an entry of default under Rule 55(a) will not automatically be set aside. *Greater St. Louis Construction Laborers Welfare Fund v. Little,* 182 F.R.D. 592, 595 (E.D.Mo.1998). Under the provisions of Rule 55(c) for setting aside a default, the Defendant must show good cause. Fed.R.Civ.P. Rule 55(c), Fed. R. Bankr.P. Rule 7055. In determining whether to set aside a default, courts typically examine such factors as whether the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused. *Greater St. Louis Construction Laborers Welfare Fund v. Little,* 182 F.R.D. 592, 595 (E.D.Mo.1998) *citing Johnson v. Dayton Electric Manufacturing Co.,* 140 F.3d 781, 783 (8th Cir.1998). Where a party fails to make an initial showing of good cause to set aside a default order, a court does not abuse its discretion by declining to consider the meritoriousness of the defense or the potential prejudice to the plaintiff. *Id. citing McMillian/McMillian, Inc. v. Monticello Insurance Co.,* 116 F.3d 319, 320 (8th Cir.1997).

■ The Court's review of the case law has failed to discover a case where, after consenting to the entry of default and waiving additional time to plead, the defendant then moved to set aside the default. The Court does not find that the Defendant's conduct rose to the level of "contumacious or deliberate disregard" of the Court's orders. See *Ackra Direct Marketing Corp. v. Fingerhut Corp.,* 86 F.3d 852, 856 (8th Cir.1996). However, the Defendant's consent to the entry of default here, was knowing and intentional and was more than a "marginal failure" to meet a deadline. *Id.* A defendant's consent to the entry of a default and the waiver of additional time to plead with the expectation that an objection to a motion for default judgment will be filed, may be an economical procedure to attempt to limit the disputed issues. However, in this matter, the Defendant has failed to show good cause for setting aside the entry of default as to

two sections of the Bankruptcy Code. Even though the case law in this Circuit does not require further inquiry, in the absence of cause, under the specific facts of this case it is appropriate to examine the Plaintiff's allegations as part of the determination of the motion to set aside the default, and as a basis for the request for default judgment.

In his affidavit opposing the entry of default judgment, the Defendant raised the possibility of a meritorious defense as to one count of nondischargeability regarding false representation under Section 523(a)(2)(A). He also argued that the Plaintiff has not shown that the Plaintiff would be unduly prejudiced by the setting aside of the default as to those allegations. See *Johnson v. Dayton Electric Manufacturing Company*, 140 F.3d 781, 785 (8th Cir.1998). The Defendant stated that at the time he received the vehicle and power of attorney from the Plaintiff he intended to honor his commitment to pay the balance of the proceeds less the commission agreed upon to the Plaintiff thus raising an affirmative defense to the allegations of intent to defraud at the time the agreement was made, an element of false representation under 11 U.S.C. § 523(a)(2)(A). In this default proceeding, the Plaintiff did not support the existence of the usual badges of fraud as evidence of the Defendant's intent at the time the Defendant agreed to act as agent for the Plaintiff in the sale of the car. The Court has determined that the Plaintiff will not be prejudiced if this portion of the default were to be set aside, and that the Defendant has raised the possibility of a meritorious defense. Therefore, upon the specific facts of this case, the Court will set aside the entry of default as to the allegations under Section 523(a)(2)(A).

**Principal/Agent—Section 523(a)(4)**

 The Plaintiff alleged that he and the Defendant had a principal/agent relationship. An agency relationship is formed when one person agrees to act on behalf of and subject to the control of a second person and the second person agrees that the first person shall act on his behalf and subject to his control. *State ex rel. Bunting v. Koehr*, 865 S.W.2d 351, 353 (Mo. banc 1993). Agency is a fiduciary relationship. *Id.* One who receives goods from another for resale to a third party does not automatically become an agent in the transaction. Whether the one who receives the goods for resale becomes an agent or a buyer depends upon whether the parties agree that his duty is to act primarily for the benefit of the one delivering goods to him or is acting primarily for his own benefit. *Bunting*, 865 S.W.2d at 354. There are three required attributes of agency. "First, an agent ... holds a power to alter legal relations between the principal and third persons and between the principal and himself; second, an agent is a fiduciary with respect to matters within the scope of his agency; and third, the principal has the right to control the conduct of the agent with respect to matters entrusted to him." *State ex rel. Bunting v. Koehr*, 865 S.W.2d 351, 353 (Mo. banc 1993) *citing* Restatement (Second) Agency §§ 12–14.

 Generally, an agent is required to account to the principal for all money and property which may come to him by virtue of the agency relationship. The principal has the burden of proof to show the existence of such a relationship and the receipt of money or property by the agent. The burden then shifts to the agent to show that he disposed of the money or property properly. See *In the Matter of the Estate of Stickler (First Christian Church of Dexter v. Leazenby)*, 551 S.W.2d 944, 951 (Mo.Ct.App.1977). Unless the agent and the principal have agreed otherwise, an agent receiving or holding money or property on behalf of the principal has a duty to the principal not to receive or deal with the money or property such that they appear to belong to the agent. *Id.* The principal's trust is in the honesty and not necessarily the solvency of the agent. *Id.* Unless agreed otherwise, the agent may

not unilaterally change the right of the principal in the specific moneys received into a debt claim against the agent. *Id.* Although the agent's receipt of money or proceeds may be lawful, if the agent uses the money or proceeds as his own, such conduct may be conversion. *Id.*

Here, the record supports a finding that a principal/agent relationship existed between the individual Plaintiff and the individual Defendant. See *In re Farbman (Bell Auto Leasing, Inc. v. Farbman),* 244 B.R. 135 (Bankr.N.D.Ill.2000). The Defendant agreed to sell the Plaintiff's car on behalf of the Plaintiff. Neither Party has suggested that the Defendant was at any time the buyer of the Plaintiff's car. The Plaintiff entrusted his car to the Defendant and gave the Defendant the car title and his power of attorney to effectuate the sale. The Defendant sold the car for the Plaintiff and received $92,000.00. Of this amount, the Defendant was entitled to keep $300.00 as payment for his services. It was the Defendant's duty to turn over the remaining proceeds to the Plaintiff.

 It is uncontroverted that the proceeds from the sale of the Plaintiff's car were paid to the Defendant, that the Defendant directed that checks representing those proceeds be made payable to himself (or his company), and that the Defendant used the proceeds to pay certain of his own creditors rather than remit the proceeds to the Plaintiff as agreed. The Defendant breached his fiduciary duty to the Plaintiff when he failed, as Plaintiff's agent, to inform his principal of the sale of the car, when he failed to remit the balance of the proceeds to his principal, when he used those proceeds to make payments to his creditors as though the proceeds belonged to him, and finally when he failed to turn over the proceeds upon the demand of his principal.

The Defendant alludes to a business entity or corporation as the entity responsible to the Plaintiff. The Plaintiff's affidavit stated he did not engage the Defendant's business to act for him. His agreement was with the Defendant personally. The Defendant did not produce evidence to the contrary.

 While it is generally true that merely holding a corporate office will not subject one to personal liability for the misdeeds of the corporation, under Missouri law, an officer of a corporation may be held liable for the tortious acts of the corporation if the officer had actual or constructive knowledge of the wrongful acts and participated in or approved of those wrongful acts. *Grothe v. Helterbrand,* 946 S.W.2d 301, 304 (Mo.Ct.App. 1997) (citations omitted). Here, it is unclear whether the corporation was in existence or what its legal status was at the time the wrongful acts were performed. In any case, the wrongful acts were performed by the Defendant and he is not shielded by the doctrine of corporate limited liability.

 When a principal suffers a loss from his agent's failure to follow the instructions given him, a cause of action arises in favor of the principal. *Marshall v. Ferguson,* 94 Mo.App. 175, 67 S.W. 935, 936 (Mo. Ct.App.1902). The Court has determined that the Defendant has no meritorious defense to the entry of default upon the allegations under Section 523(a)(4).

### Conversion—523(a)(6)

 It has also been determined that a principal's instructions may be violated in such a way as to authorize the principal to proceed against the agent for conversion. *Id.* "Conversion is the unauthorized assumption and exercise of the right of ownership over the personal property of another to the exclusion of the owner's rights." *Ware v. McDaniel,* 899 S.W.2d 170, 173 (Mo.Ct.App.1995). "The law of conversion is concerned with possession, not title, and its essence is not in the acquisition of the property by the wrongdoer but in the wrongful deprivation of it to the owner. There need only be some

repudiation of the owner's right or some exercise of dominion over it inconsistent with some right." *Price v. Ford Motor Credit Company,* 530 S.W.2d at 255 (citations omitted). Proof of conversion can be shown either by a tortious taking, or by appropriation to the use of the person in possession indicating a claim of right in opposition to the rights of the owner, or by a refusal to give up possession to the owner on demand. *Houston v. Columbia Federal Savings and Loan Association,* 569 S.W.2d 211, 214 (Mo.Ct.App.1978). Any unauthorized act of dominion or ownership exercised by one person over the personal property belonging to another in denial of or inconsistent with the owner's right is conversion. *Jackson v. Engert,* 453 S.W.2d 615, 617 (Mo.Ct.App.1970).

▪▪▪▪ Ordinarily, a general debt for money will not support a cause of action for conversion. However, when the money can be identified as a discrete fund placed in the custody of another for a definite application, the misappropriation of those funds makes the holder liable for conversion. *Seabaugh v. Seabaugh,* 839 S.W.2d 49, 50 (Mo.Ct.App.1992). Money belonging to a principal in the hands of an agent is not a "debt" owed by the agent to the principal. *In the Matter of the Estate of Stickler (First Christian Church of Dexter v. Leazenby),* 551 S.W.2d 944, 951 (Mo.Ct. App.1977). "Notes, bills, checks and other representatives of value will support a cause of action for conversion where they can be described or identified as specific chattel" *Lappe & Associates Inc. v. Palmen,* 811 S.W.2d 468, 471 (Mo.Ct.App. 1991). The money at issue here is specifically identifiable as a *res;* it being the proceeds from the sale of the Plaintiff's car which was at all times an identifiable fund. See *Walker v. Hanke,* 992 S.W.2d 925, 934 (Mo.Ct.App.1999). The Defendant's misappropriation of those proceeds to pay his own debts was a conversion of the property of the Plaintiff. The Defendant's contention that this is a simple breach of contract has no merit. The facts support a finding of conversion when the Defendant appropriated the property of the Plaintiff, without the Plaintiff's knowledge, and used the converted property as his own to pay creditors. The Court has determined that the Defendant has no meritorious defense to entry of the default upon the allegations under Section 523(a)(6).

**Nondischargeability**

The Court's finding that the Defendant breached his fiduciary duty under the principal/agent relationship supports the determination that the debt in not dischargeable under 11 U.S.C. § 523(a)(4). The Court's finding that the Defendant knowingly converted funds belonging to the Plaintiff supports the determination that the debt is not dischargeable under 11 U.S.C. § 523(a)(6). The Plaintiff has requested that a nondischargeable judgment be entered for his actual damages in the amount of $91,700.00 plus reasonable attorneys fees and costs. The Plaintiff's amount of actual damages and his entitlement to those actual damages have not been disputed. The amount of actual damages is also a sum certain, and no further hearing is required to determine the amount of actual damages.

Judgment will be entered by default in favor of the Plaintiff for actual damages including reasonable attorney fees and costs. The entry of a default as to nondischargeability under 11 U.S.C. § 523(a)(2)(A) will be set aside. If the Parties elect to pursue relief under this section, the Defendant will be granted additional time to respond to the allegations under 11 U.S.C. § 523(a)(2)(A). The Defendant's motion to set aside entry of default as to nondischargeability under 11 U.S.C. §§ 523(a)(4) and (6) will be denied. Leave for additional time for the Defendant to answer as to those counts will not be granted. A pretrial hearing to receive the Parties' announcement concerning further prosecution under Section 523(a)(2)(A) will be set by the Court.

**Punitive Damages**

The Defendant's primary objection to the entry of default judgment was based on the Plaintiff's request for punitive damages which the Defendant characterized as being beyond the scope of the pleadings. The Defendant did not dispute the substantive facts as presented by the Plaintiff and did not contest the award of actual damages including interest from January 15, 1998, or the award of the Plaintiff's reasonable attorney fees and costs.

Under the federal notice pleading rules, the allegations in Plaintiff's pleadings were sufficient to put the Defendant on notice that the Plaintiff claimed to be entitled to relief in the form of punitive damages. The Defendant suffered no prejudice from the lack of a stated amount of punitive damages. Under Missouri law, the entitlement to punitive damages and the amount of the award is within the discretion of the court and is not to be measured by a pre-set formula. *Price v. Ford Motor Credit Company*, 530 S.W.2d 249, 256 (Mo.Ct.App.1975). However, neither the allegations nor the prayer in the Adversary Complaint clearly set forth a demand for judgment for the relief of an award of punitive damages. See Fed. R.Civ.P. 8(a); Fed. R. Bankr.P. 7008.

The prayer in the Amended Complaint requested the following relief:

WHEREFORE, Plaintiff prays for judgment that the above-referenced debt to Plaintiff be excepted from the debtor's discharge, that the court enter judgment in favor of Plaintiff in the amount of $91,700.00 plus 9% interest from January 5, 1998, that the court grant Plaintiff's attorney's fees, and for such other and further relief as the court deems just and proper.

**Amended Complaint to Determine Dischargeability, Doc. 6, March 1, 1999.**

The Defendant alleged that he has a meritorious defense to the award of punitive damages in that he did not have the subjective intent to harm the Plaintiff.

This position may be in the nature of an affirmative defense to the award of punitive damages, but it is not a meritorious defense to the allegations under Section 523(a)(6). Where, as here, an agent knowingly converts property of the principal to his own use such that the property cannot be restored to the principal, the agent has wilfully injured the principal. See *Burnett v. Griffith*, 769 S.W.2d 780, 789 (Mo. en banc 1989). Such an act satisfies the requirement that the conversion be malicious in order to be found nondischargeable under Section 523(a)(6). *In re Foust (United States v. Foust)*, 52 F.3d 766, 769 (8th Cir.1995).

The allegations in Plaintiff's original and amended complaint plainly alleged that the Defendant's conduct was outrageous and condemnable and stated in Paragraph 22 that punitive damages were warranted. These allegations are sufficient under federal notice pleading rules to put the Defendant on notice that the Plaintiff may seek punitive damages. That the Plaintiff stated no specific amount of punitive damages does not prejudice the Defendant. However, in these circumstances, the failure to set forth a demand for a judgment for punitive damages, and the Defendant's assertion of a meritorious defense have provided cause to set aside the entry of default as to the request for punitive damages. Under the circumstances of this case, even if a specific amount had been pled, a hearing would be held to determine the appropriateness and amount of any punitive damage award. See Fed.R.Civ.P. 55(b); Fed. R. Bankr.P. 7055.

The purpose of punitive damages is to deter the repetition of certain conduct by the same party by inflicting punishment on that party and to discourage similar conduct by other parties by serving as an example. *Burnett*, 769 S.W.2d at 787. An award of punitive damages requires a showing of a culpable mental state of the part of the defendant. *Id.*

In determining what conduct permits the award of punitive damages, Missouri follows the Restatement (Second) of Torts, § 908(2) (1979) that states, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others." *Burnett,* 769 S.W.2d at 789.

If the Parties determine that further proceedings are necessary, the Court will entertain the Plaintiff's request for leave to amend the complaint to include a demand for punitive damages more explicitly. The Defendant will be granted additional time to respond to the amendment, and the matter will be set for such further hearings on the issue of punitive damages as are necessary. No further hearing is required as to actual damages.

### ORDER

On consideration of the record as a whole, and consistent with the determinations set out in the Memorandum in this matter,

**IT IS ORDERED** that the motion of Patrick Joseph Lomantini, Defendant, to set aside the consent entry of default as to the allegations of Louis Payne, Plaintiff, under 11 U.S.C. § 523(a)(2)(A) is granted for cause shown; and that the Defendant's motion to set aside the consent entry of default as to the Plaintiff's request for punitive damages is granted for cause shown; and

That the Defendant's motion to vacate the consent entry of default as to the allegations under 11 U.S.C. §§ 523(a)(4) and (a)(6) is denied; and that the Defendant's request for leave to file an answer or other response to the allegations under Sections 523(a)(4) and (a)(6) is denied; and

That the Plaintiff's "Motion for Entry of Default Judgment" is granted in part and denied in part as set out herein; and that by default, judgment on this Adversary Complaint is entered in favor of the Plaintiff and against the Defendant in that,

prior to the commencement of this case, said Defendant as Plaintiff's agent, breached his fiduciary duty to the Plaintiff by failing to inform his Principal of the sale of the Principal's motor vehicle; by failing to remit the balance of the proceeds of said sale to his Principal; by using the proceeds of said sale to pay the Defendant's debts, or for the payment of obligations that ultimately were of benefit to the Defendant; and by failing to turn over the proceeds of said sale upon Plaintiff's demand; and

That as a direct result of the Defendant's breach of his fiduciary duty as Plaintiff's agent, the Plaintiff suffered damages in the amount of $91,700.00; and

That, by default, judgment on this Adversary Complaint is entered in favor of the Plaintiff and against the Defendant, in that said Defendant converted the Plaintiff's property to the Defendant's own use, without the knowledge or consent of the Plaintiff; and that as a direct result of the Defendant's conversion, the Plaintiff suffered damages in the amount of $91,700.00; and

That by default, as and for judgment in this matter, the Defendant is to pay to the Plaintiff actual damages in the amount of $91,700.00 plus interest from January 15, 1998, plus attorney's fees in the amount of $8,935.50, plus costs in the amount of $601.90; and

That this debt and the judgment awarded here are not dischargeable in this Bankruptcy case under 11 U.S.C. §§ 523(a)(4) and (a)(6).

**IT IS FURTHER ORDERED** that this matter is continued and reset to *September 6, 2000 at 10:00 a.m. in Bankruptcy Court No. 1, One Metropolitan Square, 211 North Broadway, 7th Floor, St. Louis, Missouri* as a continued pretrial hearing; and that *not later than fifteen days after the date of this Order,* Counsel for the Parties are to meet and attempt to resolve any remaining disputed issues by agreement; and if the matter is not set-

tled, the Parties are to agree upon the extent of any further proceedings that may be necessary with respect to the allegations under Section 523(a)(2)(A) and the Plaintiff's allegations and request for punitive damages; and if the matter is not settled, the Parties are to appear at the continued pretrial hearing set out above to select a date for further proceedings on the Plaintiff's request with respect to the allegations under Section 523(a)(2)(A), and with respect to the Plaintiff's request for punitive damages and the Defendant's opposition thereto.