STATE of Missouri, ex rel., FORD MOTOR COMPANY, Relator,

v.

The Honorable Robert H. DIERKER, Jr., Circuit Judge, St. Louis City Circuit Court, Respondent.

No. 55399.

Missouri Court of Appeals, Eastern District, Division Five.

Jan. 24, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 28, 1989.

Application to Transfer Denied April 18, 1989.

Timothy J. Phillips, St. Louis, for relator.

Drew C. Baebler, St. Louis, for respondent.

CARL R. GAERTNER, Judge.

Ford Motor Company, a Delaware corporation with its principal place of business in Dearborn, Michigan, seeks our Writ prohibiting Respondent, a Judge of the Circuit Court of the City of St. Louis, from exercising jurisdiction in the underlying action on the grounds of improper venue. We now conclude our preliminary order was improvidently issued and we deny the Writ.

Plaintiffs in the underlying action seek to recover damages for the death of Marie Lampe who was killed when run over by her allegedly defective Ford automobile. Named as defendants in the action are Ford Motor Company, the manufacturer of the automobile, and Sunset Ford[1], a Ford

automobile dealer located in St. Louis County. The accident occurred in St. Louis County. Ford maintains a registered agent, C.T. Corp., in the City of St. Louis but, by affidavit, denies that it has an office or agent for the transaction of its usual or customary business in the City. In response to Ford's motion to dismiss for improper venue, plaintiffs contended that Ford does transact business in the City through two authorized dealers, McMahon Ford and Broadway Ford Truck Sales, Inc. In support of this argument plaintiffs filed copies of the Sales and Service Agreements between Ford, McMahon, and Broadway Ford. The respondent judge concluded that Ford's control over the dealers, their sales practices, some of their employment practices, and their location, in furtherance of Ford's own business was tantamount to keeping offices in the City of St. Louis for the transaction of Ford's usual and customary business. The motion to dismiss was denied and this proceeding in prohibition ensued.

Venue refers to the situs or geographical location in which a court of competent jurisdiction may adjudicate an action. *Wiglesworth v. Wyrick*, 531 S.W.2d 713, 721 (Mo. banc 1976). The concept of venue, handed down from common law antiquity, is now governed by statutes having as their purpose the designation of a convenient, logical and orderly forum for litigation. *Sledge v. Town & Country Tire Centers, Inc.*, 654 S.W.2d 176, 180 (Mo.App.1983). Venue of an action against one or more corporate defendants is established by § 508.040 RSMo.1986 "in the county where the cause of action accrued ... or in any county where such corporations shall have or usually keep an office or agent for the transaction of their usual and customary business." *State ex rel. Webb v. Satz*, 561 S.W.2d 113, 115 (Mo. banc 1978).

Since the cause of action in the underlying case did not accrue in the City of St. Louis and since it is undisputed that Sunset Ford has no presence in the City, the issue

---

1. Relator's petition denominates the co-defendant as Sunset Ford. In its brief the co-defendant is referred to as Sunset Auto Company. We assume the different names apply to a single entity.

before us is whether the relationship existing between Ford and its authorized dealers in the City constitutes the keeping of an office or agent in the City for the transaction of Ford's usual and customary business.

Ford strenuously asseverates that it does not. It points to the explicit disavowal contained in the Sales and Service Agreement that "under no circumstances shall DEALER be considered to be an agent of [Ford]." It argues that its usual and customary business is the manufacture of motor vehicles and the sale of motor vehicles to dealers at wholesale. It contends that it is totally insulated from the retail sale of such vehicles by the dealer to a purchaser.

■ Respondent directs our attention to the pervasive and detailed control over the dealers' operation retained by Ford under the agreements for the purpose of achieving "mutual objectives of satisfactory sales, services, and profits" and argues that such control creates an agency relationship, in fact, despite the disavowal thereof. Respondent's acceptance of this argument is reflected by the language of his order: "The court holds, as a matter of law, that an automobile dealership which has a direct and continuous relationship with the automobile manufacturer is an office or agent kept by the manufacturer for the transaction of its usual and customary business." We disagree.

■ Respondent's ruling is overly broad. Conceptually, this ruling contains ramifications which would materially alter the legal relationships between manufacturers and the retailers who accede to the manufacturer's requirements for the marketing of its products. The exercise by a manufacturer of control over the manner in which its products are marketed in order to maintain its reputation does not necessarily eliminate the independence of the retailer who complies with such controls in order to obtain the privilege of selling the product. In such cases the exercise of control attaches to the product and is limited to the manner in which that product is marketed and to the dealings between the manufacturer and the retailer in relation to the product. The control does not encompass every phase of the retailer's operation. Indeed, in the instant case, the Sales and Service Agreement expressly reserve to the dealers the right to purchase from others without liability or obligation of any kind to Ford.

Nevertheless, we believe Respondent reached the right result under the circumstances of this case. Respondent places heavy reliance on cases holding that under the venue statute independent insurance agents who place insurance with various insurance companies are agents for the transaction for the usual and customary business of the insurance companies who authorize them to solicit and submit applications for insurance. *State ex rel. Wilson v. Sanders,* 745 S.W.2d 735, 736 (Mo.App. 1987); *State ex rel. Cameron Mutual Ins. Co. v. Reeves,* 727 S.W.2d 916, 918 (Mo. App.1987). The rationale underlying these decisions is sound and logical. Venue, based upon convenience, differs from jurisdiction, based upon some form of presence within the forum. Therefore, in order to obtain jurisdiction over a corporation service of process is generally required upon an officer or managing or general agent appointed for the purpose of establishing corporate residence, § 506.150.1(3) RSMo. 1986, or a party designated by statute to fulfill that function. *e.g.* § 375.906.2 RSMo.1986 (Director of Insurance appointed to accept service of process on foreign insurance companies); § 506.210(2) RSMo. 1986 (Secretary of State appointed as agent for service of process under motor vehicle long-arm statute). Convenience is accommodated for purposes of venue wherever a corporation sees fit to keep an office or agent for the transaction of its usual and customary business. For this purpose, the agent is simply "a person authorized by another to act for him, one entrusted with another's business." *Wilson,* 745 S.W.2d at 737; *Cameron Mutual,* 727 S.W.2d at 918, both quoting from Black's Law Dictionary, p. 85 (4th ed. 1968). The business of insurance companies is the selling of insurance to the public; therefore, an agent authorized by a company to solicit the sale

of insurance, even though he is an independent contractor not subject to the control of the insurance company in his manner of operation, is nevertheless an agent kept by the company for the transaction for its usual and customary business.

Insofar as the selling of automobiles as described in the case before us, we find these cases distinguishable and inapposite. An insurance company sells its product directly to the insured through the service of the agent who solicits the application and forwards it, together with the premium payment (less his commission perhaps) to the company which issues the policy to the insured. There is but a single transaction in which the agent is only an intermediary. Insofar as is reflected by the record before us, Ford does not sell motor vehicles to the public, only to its dealers. The sale to a dealer is one transaction, separate and distinct from the second sale by the dealer to the ultimate purchaser. No part of the payment made by the ultimate purchaser is transmitted to Ford. The transfer of title, essential to the sale of a motor vehicle in Missouri, § 301.210.4 RSMo.1986 is from the dealer to the ultimate purchaser. The record supports Ford's argument that its usual and customary business is the sale of motor vehicles only to dealers.

However, the record also discloses that an integral part of Ford's business is the issuance and servicing of warranties directly to the ultimate purchaser. The Sales and Service Agreements clearly establish that the warranty involves a direct relationship between Ford and the ultimate purchaser in which the dealer serves only as an intermediary, an agent authorized and entrusted to conduct this phase of Ford's business. Section 2(i) of the Agreement provides that Ford shall issue to each owner (ultimate purchaser) a warranty exclusive of all other expressed or implied warranties. The dealer is required to incorporate Ford's warranty as a part of the purchaser's order form sent to Ford or in the contract for sale. The dealer must deliver Ford's warranty to the purchaser at the time of delivery of the vehicle. Section 3(f) of the Agreement contains similar provisions regarding Ford's warranty of "genu-

ine parts". The dealer is entrusted with the performance of all warranty and policy service on Ford products, including the warranty service on such products sold by other dealers. He is obligated to give precedence to such warranty service over all other service work. If the owner is not satisfied, the dealer is directed to report this to Ford and to seek Ford's assistance. The dealer may only use Ford "genuine parts" in performing warranty service by personnel trained at Ford's training schools. The dealer is reimbursed by Ford for the cost of labor and parts used in performing warranty service. We find inescapable the conclusion that Ford has authorized and entrusted its dealers with the conducting of its warranty business to even a greater degree than the insurance companies and the independent sales agents in *Wilson* and *Cameron Mutual.*

Ford urges us to adopt the decision in *Gardner v. International Harvester Co.,* 113 Ill.2d 535, 101 Ill.Dec. 842, 499 N.E.2d 430 (1986) in which our neighboring state refused to find that a manufacturer was doing business in a county wherein an independent dealer of its products was located. The Illinois Code of Civil Procedure, Ill. Rev.Stat.1981, ch. 110, par. 2–101, which pertains to venue, unlike the Missouri corporate venue statute, is based upon residence. In Illinois the residence of a foreign corporation is established where "it has its registered office or other office or is doing business." Ill.Rev.Stat.1981 ch. 110, par. 2–102(a). Therefore, in *Gardner,* the court was not called upon nor did it consider the effect, for venue purposes, of conducting business through an independent agent, as in *Wilson* and *Cameron Mutual.* In *Gardner,* the decisive factor was the independence of the dealer rather than the nature of the business conducted. *Gardner,* 101 Ill.Dec. at 845, 499 N.E.2d at 433. Therefore, the fact that dealers performed warranty work for Harvester was said "not to alter the basic relationship ...between Harvester and the independent dealers." *Id.* Moreover, the details of the warranty arrangement, whether expressed or implied, whether issued by Harvester, the

dealer, or both, whether providing for dealer compensation or not, whether the performance of warranty service by Harvester dealers was explicitly restricted and defined as it is by Ford, are not disclosed in the *Gardner* opinion. Accordingly, we find *Gardner* unpersuasive in our application of Missouri statutes, referring to the keeping of an agent for the transaction of business, to the very different arrangement through which Ford limits and restricts the service of the warranty it issues to the ultimate purchaser of its product. We also note *Gardner's* statement of Illinois policy that solicitation of business in a county does not establish venue there, 101 Ill.Dec. at 844, 499 N.E.2d at 432, in contrast to the Missouri policy that the keeping in a county of a sales representative to solicit business is a factor for consideration in determining proper venue. *Ball v. American Greetings Corp.*, 752 S.W.2d 814, 825 (Mo.App. 1988); *State ex rel. Pagliara v. Stussie*, 549 S.W.2d 900, 903 (Mo.App.1977).

We are not unmindful of the expressed disavowal contained in the Sales and Service Agreement that the dealer is not to be considered an agent of Ford. The language of this disavowal, prohibiting the dealer from acting as or representing himself as an agent or "in any manner assume or create any obligation on behalf of or in the name [Ford]" is obviously directed toward the avoidance of contractual or other liabilities under the theory of principal and agent. As clearly demonstrated by *Wilson* and *Cameron Mutual,* for venue purposes, an agent need not have the power to bind his principal. It is sufficient that he be authorized and entrusted to transact corporate business. Furthermore, the characterization of the relationship by the parties is not controlling "where surrounding facts evince an agency relationship, however artfully disguised." *Empson v. Missouri Highway & Trans. Comm'n*, 649 S.W.2d 517, 521 (Mo.App.1983).

For the reasons stated above, we have concluded our preliminary order in prohibition was improvidently issued and we deny Ford's Petition for a Writ of Prohibition.

GRIMM, J., concurs.

DOWD, J., concurs in result.