**STATE ex rel. Gerald BUNTING, Representative of Tracey Bunting, Deceased, Relator,**

v.

**Hon. Jack KOEHR, Judge, Circuit Court, St. Louis City, Respondent.**

No. 75126.

Supreme Court of Missouri,
En Banc.

Nov. 23, 1993.

Michael C. Goldberg, St. Louis, for relator.

Joseph H. Mueller, Robyn G. Fox, Gary K. Morgan, St. Louis, for respondent.

ROBERTSON, Judge.

We issued our alternative writ in mandamus, Mo. Const. art. V, § 4, to decide whether a dealership that purchases a manufacturer's products for resale, performs warranty work on a manufacturer's products and who, as part of the sale of a manufacturer's products, extends the manufacturer's warranty to the consumer is an agent of the manufacturer for purposes of venue. § 508.040, RSMo 1986. We hold that such activities do not render the dealer an agent of the manufacturer.

In the underlying case, the trial court sustained defendants' motion to dismiss the plaintiff's petition for improper venue but failed to transfer the case to a circuit having venue over the action. Section 476.410, RSMo Supp.1992. The alternative writ of mandamus previously issued is made peremptory.

### I.

In the underlying action, relator, Gerald Bunting, filed suit to recover damages for the wrongful death of his son, Tracey Bunting, at Peaceful Valley Lake in Gasconade County. Relator averred that Tracey died as a result of acute carbon monoxide poisoning after swimming behind a boat manufactured by Sea Ray, Inc., and powered by a motor manufactured by Mercury Marine, Inc.

Relator filed his action in the Circuit Court of the City of St. Louis, although the cause of action accrued in Gasconade County and none of the defendants maintains an office or other place of business in the City of St. Louis. Relator founded his claim for venue in the City of St. Louis on the presence of two independent boat motor dealers selling boat motors in the City of St. Louis, under a

"Sales & Service Agreement" (the "agreement") with Mercury Marine. The agreement appoints each dealer an "authorized dealer for the retail sale, display, and servicing" of Mercury Marine products. The agreement does not require the dealers to sell Mercury Marine products exclusively.

In return for Mercury Marine's agreement to sell the dealers Mercury Marine products for resale, the dealers agree, among other things, to "[f]urnish customers with Mercury Marine's warranty on new Products and with information and training as to the safe and proper operation and maintenance of products." The dealer further agrees to

> [c]omplete and mail Mercury Marine's warranty registration card ... immediately upon delivery of Products to the user and assist Mercury Marine in performing Products defect and recall campaigns. In the event Dealer fails to return the [warranty registration] card to Mercury Marine, Dealer agrees to indemnify Mercury Marine against any liability, loss or damage which it may sustain which is proximately caused [sic] by that failure. Dealer also agrees not to register Products early for any purpose, including obtaining early rebates or discounts.

The dealer also agrees that it "shall have no authority to and agrees not to make any representations, verbally or in writing, relating to Mercury Marine's warranty other than those made by Mercury Marine in its written warranty" and "agrees to provide timely warranty service on all Product [sic] presented to Dealer by purchasers in accordance with Mercury Marine's current warranty service program ... to install and repair Products in accordance with written procedures of Mercury Marine, and ... recommend the use of genuine Quicksilver replacement parts...." Mercury Marine agrees *promptly* to "honor all legitimate warranty claims on Product when made by purchaser through Dealer in the manner prescribed by Mercury Marine ..., and to credit or reimburse Dealer for all approved warranty service performed at dealership on behalf of Mercury Marine."

The defendants in the underlying action filed a motion to dismiss for improper venue. The respondent trial judge sustained the motion. Relator unsuccessfully sought a writ of mandamus in the Court of Appeals, Eastern District, before this Court issued its alternative writ in mandamus.

## II.

### A.

Section 508.040, RSMo 1986, provides in pertinent part:

> Suits against corporations shall be commenced either in the county where the cause of action accrued, ... or in any county where such corporations shall have or usually keep an office or agent for the transaction of their usual and customary business.

Mercury Marine does not keep an office in the City of St. Louis. Thus, for venue to be proper in the City of St. Louis, Mercury Marine must maintain an agent there for the transaction of its usual and customary business.

*State ex rel. Elson v. Koehr,* 856 S.W.2d 57, 60 (Mo. banc 1993), reached an important conclusion in construing the words "agent in the transaction of its usual and customary business" in the context of Section 508.040. *Koehr* holds that traditional rules of agency articulated in the Restatement of Law (Second) Agency determine the existence of agency for purposes of venue.

■ There are three attributes of agency.[1] First, "[a]n agent ... holds a power to alter legal relations between the principal and third persons and between the principal and himself." Restatement (Second) Agency, § 12. Second, "[a]n agent is a fiduciary with respect to matters within the scope of his agency." *Id.* § 13. Third, the "principal has the right to control the conduct of the agent with respect to matters entrusted to him." *Id.* § 14. The absence of any one of the three elements of agency defeats a claim that agency exists.

---

1. Cf. Restatement (Second) Agency, § 1(1). Agency is the fiduciary relation [Cf. 13] which results from the manifestation of consent by one person to another that the other shall act on his behalf [Cf. 12] and subject to his control [Cf. 14], and consent by the other so to act.

Relator first asserts that the dealers are agents of Mercury Marine for the purpose of distributing and selling Mercury Marine products to the public. Relator claims that the agency relationship is established because Mercury Marine is in the business of manufacturing, selling and distributing its products and has entrusted the retail sale of those products to St. Louis dealers.

Restatement (Second) Agency, § 14J provides:

One who receives goods from another for resale to a third person is not thereby the other's agent in the transaction: whether he is an agent for this purpose or is himself a buyer depends upon whether the parties agree that his duty is to act *primarily* for the benefit of one delivering the goods to him or is to act *primarily* for his own benefit.

[Emphasis added.]

"Primarily" means "principally." Webster's Third New International Dictionary, 1800 (1976). Although the agreement requires the dealer to conduct its business "in a manner that preserves and enhances the reputation of both Mercury Marine and Dealer for providing quality products and services," the dealer is independent of Mercury Marine, is permitted to sell products of competing companies, and purchases Mercury Marine motors primarily for the purpose of reselling them for its own profit. The dealer does not sell Mercury Marine products principally for the benefit of Mercury Marine. The relationship between the dealers and Mercury Marine for the sale of Mercury Marine products is, therefore, that of buyer and seller, not agent and principal.

Second, relator urges that a dealer's act of extending to and perfecting Mercury Marine's product warranty for the ultimate purchaser is a sufficient factual predicate to support the legal conclusion that the dealer is Mercury Marine's agent. We disagree.

Agency does not exist unless the dealer has the "power to alter the legal relationship" between Mercury Marine and the ultimate purchaser. Restatement (Second) Agency § 12. In this case, the dealer purchases the boat motor from Mercury Marine.

When the dealer purchases the motor, part of the bargain includes the manufacturer's warranty. The dealer agrees to extend that warranty to any subsequent purchaser of the motor and notify Mercury Marine of the new holder of the warranty. The manufacturer's warranty is an integral part of the product the dealer purchases for resale and the ultimate user purchases. For purposes of agency analysis, the warranty is no different than a spark plug or a piston within the motor.

The dealer's contractual obligation to inform the purchaser of the manufacturer's warranty and notify the manufacturer of the identity of the new holder of the warranty is not the same as a power to alter a legal relationship between the manufacturer and the purchaser. This is so because the manufacturer (1) sells the product to the dealer for resale; (2) unilaterally imposes the terms of the warranty prior to the sale to the dealer; (3) forbids the dealer from altering the terms of the warranty in any way; (4) requires the dealer to extend the warranty as part of the sale and notify the manufacturer of the new holder of the warranty; and (5) makes the warranty a part of the purchaser's bargain when he or she purchases the product. We hold that under these circumstances, there is no agency between the manufacturer and the dealer as there is no power in the dealer to alter the legal relationship between the manufacturer and the purchaser.

Nor do we believe that relator's final claim of agency—that a dealer's performance of warranty work on Mercury Marine products establishes agency—places in the dealer the power to alter Mercury Marine's legal relationship with third parties. Relator supports his argument with *State ex rel. Ford Motor Company v. Dierker*, 766 S.W.2d 691, 694 (Mo.App.1989). *Dierker* holds that a Ford Motor Company dealership becomes an agent of Ford Motor Company when it performs warranty work on behalf of Ford. The court of appeals reasoned that Ford's extensive control over the dealer in the performance of the warranty work warranted a conclusion of agency. Control is one of the three attributes of agency. Restatement (Second) Agency § 14.

In reaching its conclusion, the court of appeals in *Dierker* relied on the definition of agency found in *Wilson v. Sanders*, 745 S.W.2d 735, 737 (Mo.App.1987). An agent is " 'a person authorized by another to act for him, one entrusted with another's business.' Black's Law Dictionary, p. 85 (4th ed. 1968)." *Koehr*, however, implicitly rejects the *Sanders* definition as insufficiently precise to determine the existence of an agency relationship.

We assume for the sake of argument that Mercury Marine exercises substantial control over the dealers' warranty work. Nevertheless, agency does not exist unless both of the remaining elements of agency are also present.

We conclude that no agency exists as a result of the dealers' performance of warranty work for Mercury Marine and the purchaser. This is because the dealers' obligation to perform warranty work is not tantamount to a power to alter Mercury Marine's legal relationship with a third party. The warranty that Mercury Marine sells with its product establishes the legal relationship between the manufacturer and the purchaser. The dealers do not alter that relationship when they undertake the repairs and/or replacements for which the warranty provides. To the extent that *Dierker* holds otherwise, it is overruled.

## B.

Section 476.410 requires that a trial court possessed of case filed in the wrong circuit "shall transfer the case to any ... circuit in which it could have been brought." The duty imposed by Section 476.410 is ministerial, not discretionary. Mandamus lies to require a trial court to perform a ministerial duty. Upon finding that venue was not proper in St. Louis City, the trial court could not dismiss the action. Instead, Section 476.410 required the trial court to transfer the case to a circuit having venue.

We make our alternative writ peremptory and order respondent to transfer the case to the Circuit Court of Gasconade County or such other circuit having venue.

## III.

The alternative writ of mandamus previously issued is made peremptory. Respondent is ordered to transfer the underlying case to the Circuit Court of Gasconade County or such other circuit having venue.

COVINGTON, C.J., HOLSTEIN, BENTON, THOMAS, LIMBAUGH, JJ., and CRANE, Special Judge, concur.

PRICE, J., not sitting.