STATE of Missouri ex rel. DOMINO'S PIZZA, INC., Relator,

v.

The Honorable James R. DOWD, Judge of the Circuit Court of the City of St. Louis, Missouri, Respondent.

Nos. 70623, 70625.

Missouri Court of Appeals, Eastern District. Writ Division Two.

Feb. 18, 1997.*

Motion for Rehearing and/or Transfer to Supreme Court Denied March 20, 1997.

* Opinion originally filed on October 22, 1996. Case transferred to Supreme Court on certification of dissenting judge. Retransferred January 7, 1997.

Armstrong, Teasdale, Schlafly & Davis, Carl R. Gaertner, Frank N. Gundlach, William M. Corrigan, Jr., Marshall R. Hoekel, Evans & Dixon, Edward S. Meyer, Stephen E. Winborn, William B. England, Denis C. Burns, St. Louis, Appleton, Kretmar & Beatty, David M. Stolze, Clayton, for Relator.

Rosenblum, Goldenhersh, Silverstein & Zafft, P.C., Mark E. Goodman, Sanford J. Boxerman, Rothman, Sokol, Adler & Sarachan, P.C., Gary A. Sarachan, Brinker, Doyen & Kovacs, P.C., David G. Ott, Michael R. Cardenas, David A. Reed, Clayton, for Respondent.

GERALD M. SMITH, Judge.

We issued our preliminary writs of mandamus on the petitions of Domino's Pizza, Inc. to examine the question of venue in two cases in which the respondent denied Domino's motion to transfer the cases to a different venue. On our own motion we consolidated the two cases. We make our preliminary writs permanent.

In the first action Hilbert Groseclose, identified only as a resident of the State of Missouri, sought to recover for personal injuries sustained in an automobile accident in Scott County with an employee of a Domino's franchisee, D & D Pizza, Inc., who was delivering pizzas in the regular course of his employment. Suit was brought against Domino's Pizza, Inc. and D & D Pizza. The second action was brought by Terry B. Wampler, a resident of * Opinion originally filed on October 22, 1996. Case transferred to Supreme Court on certification of dissenting judge. Retransferred January 7, 1997. Jefferson County, for personal injuries sustained in an automobile accident in Jefferson County with an employee of a Domino's franchisee, Lynn Enterprises, Inc., who was delivering pizzas in the regular course of his employment. Both actions were brought in the Circuit Court for the City of St. Louis.

Domino's is a Michigan corporation authorized to do business in Missouri. Domino's does not maintain an office in the City of St. Louis. D & D is a Missouri corporation located in Cape Girardeau and doing business in Cape Girardeau and Scott Counties. Lynn is a Missouri corporation located in Cape Girardeau and doing business in Cape Girardeau and Jefferson Counties. Venue was premised upon the presence in the City of St. Louis of a franchisee of Domino's, One Way Pizza, Inc., which has no involvement in either of the underlying suits. Domino's sought by motion to have both cases transferred to counties other than the City of St. Louis, in which venue would be proper. § 476.410 RSMo 1994. The respondent denied the motions and the petitions for mandamus followed.

Mandamus is the appropriate remedy where a court fails to perform a ministerial act such as ordering the transfer of a case from a court of improper venue to a court of proper venue. *State ex rel. DePaul Health Center v. Mummert*, 870 S.W.2d 820 (Mo. banc 1994)[9].

Venue here is determined by § 508.040 RSMo 1994. It provides in pertinent part:

Suits against corporations shall be commenced either in the county where the cause of action accrued ... or in any county where such corporations shall have or usually keep an office or agent for the transaction of their usual and customary business.

Venue refers to the situs in which a court of competent jurisdiction may adjudi-

cate an action. The primary purpose of Missouri's venue statutes is to provide a convenient, logical, and orderly forum for the resolution of disputes. *State ex rel. Elson v. Koehr,* 856 S.W.2d 57 (Mo.banc 1993)[1–3].

■ Counsel for respondent contend that One Way is an agent of Domino's for the transaction of Domino's usual and customary business and therefore that venue in St. Louis City is proper.

For purposes of venue our Supreme Court has adopted the definition of agency found in § 1, *Restatement (Second) of Agency. State ex rel. Elson v. Koehr, supra* at [6]. That section states: "[Agency is] the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Under the *Restatement* the essential characteristics of the agency relation are:

(1) that an agent holds a power to alter legal relations between the principal and a third party; *Restatement (Second) of Agency* § 12;

(2) that an agent is a fiduciary with respect to matters within the scope of the agency; *Restatement (Second) of Agency* § 13;

(3) that a principal has the right to control the conduct of the agent with respect to matters entrusted to the agent; *Restatement (Second) of Agency* § 14. *State ex rel. Elson v. Koehr, supra.*

■ The absence of any one of the three elements of agency defeats a claim that agency exists. *State ex rel. Bunting v. Koehr,* 865 S.W.2d 351 (Mo.banc 1993)[1].

Domino's in some locations, but not in Missouri, owns and operates facilities which sell and deliver pizzas. In Missouri it sells franchises to others who own and operate the facilities which sell and deliver pizzas. As with most franchises the contracts between Domino's and its franchisees contain mandatory requirements and standards which the franchisee must meet in order to maintain the quality and reputation established by the franchisor and necessary for public acceptance of the business on a world wide basis. The contracts vest in Domino's considerable control over the facilities, menus, ingredients, and service provided by the franchisees. We need not set out in detail the various provisions of the contract which provide such control.

We also do not find it necessary to address the interesting initial question of whether the sale and delivery of pizzas is the usual and customary business of Domino's in Missouri where it only sells and supervises franchises and does not itself sell and deliver pizzas.

Respondent first contends that One Way has the power to alter legal relationships. This contention is based (1) on the authority of franchisees to change the price of pizzas through coupons, discounts, refunds and free pizzas, and (2) on the franchisees' ability to "subject the principal to tort liability". The requirement of the agent's ability to alter legal relationships refers to relationships between the *principal* and third parties. *State ex rel. Bunting v. Koehr, supra* at [4]. The record does not establish that any relationship between the principal and any third party is altered by the giving of coupons, discounts, refunds and free pizzas. The principal does not sell pizzas in Missouri so it has no legal relationship with the customers and the record does not reflect that any action of One Way could affect any legal relationship Domino's might have elsewhere.[1]

Domino's contends that the legal relationships referred to in the *Restatement* are contractual only. Respondent counters that One Way can subject Domino's to tort liability and that meets the test of "altering legal relationships". In advancing that contention respondent relies upon § 12 of the *Restatement (Second) of Agency* which defines the power of an agent as the ability to affect the legal relations of the principal in matters connected with the agency including "subjecting the principal to a tort liability, as where a servant, while acting within the

---

**1.** The provisions of a Manager's Reference Guide which it is claimed evidence the authority of the franchisee in regard to coupons, etc. are less than clear what binding effect the actions of the franchisee have. In any event, the provisions upon which respondent relies are specifically binding only to Domino's owned stores and informational as to franchisees.

scope of his employment, injures a third person". While the "power of an agent" may include the ability to subject his principal to tort liability, the question that first must be determined is whether he is an agent. That is, the inquiry before us and to assert that One Way can subject Domino's to tort liability is to presume that One Way is an agent which is the issue to be decided.

In this connection respondent relies on *J.M. v. Shell Oil Company*, 922 S.W.2d 759 (Mo.banc 1996). That case arose on summary judgment and did not involve the issue of agency. The question to be determined there was not whether the franchisee was an agent of Shell Oil Company, but whether Shell's contract gave it sufficient control of the premises that it assumed a duty to invitees to the premises not normally attributed to a lessor. The issue of control may be pertinent in the underlying litigation in determining Domino's liability for the negligence of its franchisee's employee, but it is not determinative of the status of One Way as an agent of Domino's for venue purposes.[2] We are unable to find power in One Way to alter legal relations between the principal and third parties.

One Way also does not meet the requirement of being a fiduciary. A fiduciary is one who acts primarily for the benefit of the principal. § 14J of the *Restatement (Second) of Agency; State ex rel. Bunting v. Koehr, supra* at [2,3]. It is in the mutual interest of both Domino's and its franchisees that the reputation and quality of Domino's pizza facilities be maintained at a high level. The restrictions and controls included in the contracts are for that purpose, but they do not evidence that franchisees are acting primarily for the benefit of Domino's. The franchisees are independent businesses

whose object is to make a profit from selling and delivering pizza to their customers. They may purchase some ingredients from Domino's but they produce, sell and deliver the product to their customers. The conduct of their businesses is primarily for their own benefit, not Domino's. The maintenance of reputation and quality may serve to benefit Domino's but it is not the primary reason for the activities of the franchisees. *State ex rel. Bunting v. Koehr, supra* at [2,3].[3]

Respondent also contends that the requirement for the franchisees to pay Domino's on a weekly basis a small percentage of the gross income is indicative of a fiduciary relationship. Respondent relies upon *State ex rel. Elson v. Koehr, supra* to support that contention. That case is inapposite. There travel agents sold tickets to customers for travel on Southwest Airlines. They also collected money from the customers and that money was forwarded by the agents to Southwest through the Airline Reporting Corporation. The agents were collecting money for service provided by Southwest, not by the agents, and they were collecting and holding that money for the benefit of Southwest. The money held was essentially being collected and held in trust for the Airline. The fiduciary relationship in that situation is clear.

In contrast here, the franchisees are selling their own product to their customers. The money that is collected is for the franchisee's product, not Domino's product. They are not required to segregate any of the money and treat it as Domino's; the payment made by the franchisees comes from their general funds and is due and owing pursuant to their contractual obligations. That a contract or a lease premises the

**2.** Respondent also relies upon *Duluth Herald & News Tribune v. Plymouth Optical Company*, 286 Minn. 495, 176 N.W.2d 552 (1970) for the proposition that a franchisee can bind the franchisor. That was an apparent authority case in which the franchisor allowed its franchisee to contract in the franchisor's name. No similar facts exist here. In the opinion the court suggests that the franchisor should require its franchisees to disclose they are independent businesses. That is what Domino's does and the way the franchisees advertise.

**3.** Respondent attempts to distinguish *Bunting* on the basis that there the dealers could sell competing products. We do not find that to be a valid distinction. In *Elson* the travel agents could also represent other airlines but they were still found to be agents as to their dealings with Southwest. *See also State ex rel. Cameron Mutual Insurance Company v. Reeves*, 727 S.W.2d 916 (Mo.App. 1987). It is not the exclusivity of the relationship, but the nature of the relationship which is critical.

amount of payment due under the contract or lease on a percentage of gross receipts does not create a fiduciary relationship. A fiduciary relationship is not present here.

Because at least two of the three elements of agency are not established we need not discuss the control element.

As previously stated, the primary purpose of the venue statute is to provide a convenient, logical, and orderly forum for the resolution of disputes. It is difficult to find that purpose served by allowing suits with no connection with the forum or the residents of the forum to be brought in the forum. These cases involve automobile accidents occurring in counties outside the city of St. Louis involving people and businesses located in those counties. We must also note that since *Willman v. McMillen,* 779 S.W.2d 583 (Mo. banc 1989) trial courts lack the authority to decline venue on forum non conveniens grounds. The statute as interpreted by the cases does not authorize cases such as those before us to remain in the forum selected by the plaintiffs.

The preliminary writ of mandamus is made permanent and the respondent is directed to sustain the motions to transfer and to transfer the cases to an appropriate venue selected by the plaintiff in each case.

RHODES RUSSELL, P.J., concurs.

PUDLOWSKI, J., dissents in separate dissenting opinion.

PUDLOWSKI, Judge, dissenting.

This matter was retransferred to this court from the Supreme Court after transfer from this court after certification by this writer.

After review of this appeal and the majority panel opinion, I respectfully dissent from the issuance of the permanent writ of mandamus.

In *J.M. v. Shell Oil Co.,* 922 S.W.2d 759, 764 (Mo. banc 1996) a franchisor-franchisee case, the Supreme Court stated, "Many factors are included in the calculus for determining if one person is the servant of an-

other for purposes of establishing vicarious liability. However, the *touchstone* is whether the party sought to be held liable has the *control* or *right to control* the conduct of another in the performance of an act."

The majority opinion relies on *State ex rel. Bunting v. Koehr,* 865 S.W.2d 351 (Mo. banc 1993) and asserts:

■ There are three attributes of agency.[1] First, '[a]n agent ... holds a power to alter legal relations between the principal and third persons and between the principal and himself.' Restatement (Second) Agency, § 12. Second, '[a]n agent is fiduciary with respect to matters within the scope of his agency.' *Id.* § 13. Third, the 'principal has the right to control the conduct of the agent with respect to matters entrusted to him.' *Id.* § 14. The absence of any one of the three elements of agency defeats a claim that agency exists. *Id.* at 353.

The opinion then concludes that two of the three attributes do not exist and, therefore, an agency is not present. As a result, the opinion concluded it did not have to discuss the "touchstone" of a vicarious relationship, i.e., control of another. I have reviewed all of the pleadings and documents and conclude that there are sufficient facts to support the respondent's allegations that the relator had control or right of control of respondent to sustain an agency relation and, therefore, the writ of mandamus should be denied.

I respectfully suggest that the standard in *Shell* is the correct analysis of vicarious liability of a franchisor and applicable to this case. I also believe that said *Shell* rule is in conflict with the rule set out in *State ex rel. Bunting v. Koehr,* 865 S.W.2d 351 (Mo. banc 1993).

Therefore, I respectfully dissent.

---

1. Cf. Restatement (Second) Agency, § 1(1). Agency is the fiduciary relation [Cf. 13] which results from the manifestation of consent by one person to another that the other shall act on his behalf [Cf. 12] and subject to his control [Cf. 14], and consent by the other so to act.