**HAVENS STEEL COMPANY, Appellant,**

v.

**MISSOURI PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION, Respondent.**

No. 79956.

Supreme Court of Missouri, En Banc.

Nov. 26, 1997.

Rehearing Denied Dec. 23, 1997.

Richard W. Miller, Danne W. Webb, Miller Law Firm, Kansas City, for Appellant.

Mary Anne Lindsey, Gerre S. Langton, Kevin P. Schnurbusch, St. Louis, for Respondent.

ROBERTSON, Judge.

In this case of first impression, we determine whether the Missouri Insurance Guaranty Association's responsibility to pay "unpaid claims," section 375.785.3(2), RSMo 1986, is limited to paying unpaid claims lodged by an injured third party claimant or extends to an unpaid claim sought by an insured of an insolvent insurance carrier. The trial court and the Court of Appeals, Eastern District, limited Missouri Insurance Guaranty Association's obligation to unpaid claims filed by injured third-party claimants. We granted transfer because of the general interest and importance of the question raised, have jurisdiction, Mo. CONST. ART. V, SEC. 10, and reverse the judgment of the trial court.

## I.

The facts are stipulated. Havens Steel Company ("Havens") is a steel fabricator and erector organized under the laws of the State of Missouri. On July 25, 1986, Havens, as a subcontractor, entered into an agreement with J.A. Jones Construction, Inc. ("Jones"), the prime contractor, to perform steel fabrication and erection on a construction project in Chicago, Illinois. Havens obtained two policies of insurance from American Mutual Liability Company providing liability protection—a general liability policy carrying limits of $1 million per occurrence and $1 million in the aggregate and an umbrella policy carrying limits of $4 million per occurrence and $4 million in the aggregate.

On October 27, 1986, Sam Barrett, a Jones employee, fell through an opening in the floor of the project and suffered serious injury. On June 27, 1989, Barrett and his wife sued Havens and other defendants in Chicago, Illinois, to recover their damages. In addition, Barrett filed a workers' compensation claim against Jones. Jones carried a workers' compensation policy with Aetna Casualty Company. Aetna paid Barrett $831,375.00 as follows: $347,338.94 for medical expenses; $174,036.06 for temporary, total disability for loss wages; and $310,000.00 in

lieu of future wages. As part of those payments, Jones and Aetna agreed not to assert subrogation rights against Barrett.

On March 9, 1989, a Massachusetts court declared American Mutual Liability Company insolvent.

On September 17, 1993, the Barretts settled their civil suit against Havens and other defendants for a total of $2,790,000.00. Havens' share of the settlement required payment of $515,000.00. Havens paid the Barretts that amount. The Barretts released all claims against Havens and Missouri Insurance Guaranty Association ("MIGA"). Havens filed a timely claim with MIGA.

The settlement documents acknowledged the importance of the Jones and Aetna waiver of their subrogation rights and recited that the settlement would not have been completed without that waiver.

Following the settlement, Havens demanded that MIGA reimburse it for the $515,000.00 payment Havens made to the Barretts. MIGA refused to pay the amount demanded and Havens brought suit. The trial court awarded Havens $47,160.94. The trial court did not set forth the basis for the amount awarded. However, the parties agree on appeal that the $47,168.94 results from subtracting the amount paid ($831,375.00) by the workers' compensation carrier, Aetna, from the total of the Barretts' damages ($347,338.94 as special damages and $531,197.00, the present value of his lost wages, for a total of $878,535.94).

Havens appealed, contending that the trial court erred in not awarding it the full $515,000.00.

## II.

This case requires us to consider a statute that has avoided judicial inspection until now.

MIGA is created by statute. The parties are in agreement that the applicable statute is section 375.785, RSMo 1986, the statute in effect at the time of the declaration of American Mutual's insolvency.

MIGA is a nonprofit, unincorporated, legal entity whose membership consists of all insurers transacting certain types of insurance business within the state. Section 375.772.1, RSMo 1994. The members are assessed on a pro rata basis to cover the obligations of MIGA. Section 375.774.1, RSMo 1994. Because the obligations of MIGA are ultimately paid by all purchasers of insurance, the legislature has imposed limitations on the obligations of MIGA. Section 375.785.4(1)(a), RSMo 1986. When an insurer becomes insolvent, MIGA is "deemed the insurer to the extent of its obligations on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent." Section 375.785.4(b), RSMo 1986.

Section 375.785.3(2), RSMo 1986, defines a "covered claim" as

an unpaid claim including those for unearned premiums, . . . which arises out of and is within the coverage of an insurance policy . . . if such insurer becomes an insolvent insurer after September 28, 1971, and the claimant or insured is a resident of this state at the time of the insured event. . . . "Covered claim" shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise.

(Emphasis added.) Section 375.785.4(1)(a)b, RSMo 1986, also applies.

In the case of claims arising from bodily injury . . . the amount of any such award shall not exceed the claimant's reasonable expenses incurred for necessary medical, surgical . . . and comparable services ... and any amounts lost or to be lost by reason of claimant's inability to work and earn wages or salary or their equivalent. . . .

As previously set out, the parties agree that Barrett's medical claims and lost wage claims total $878,535.94. MIGA is "obligated to the extent of the covered claims . . . but [that] obligation shall include only that amount of each covered claim which is in excess of two hundred dollars and is less than three hun-

dred thousand dollars." Section 375.785.4(1)(a), RSMo 1986.

Havens claims that its entire claim is an "unpaid" claim within the meaning of the statute. MIGA believes that Barrett is the only claimant the statute recognizes and, because Aetna has paid most of Barrett's claims, only those portions of Barrett's special damages unpaid by Aetna, become the responsibility of MIGA.

■ The statutory definition of "covered claim" defeats MIGA's position. First, it is clear that a "covered claim" includes a claim by an insured. Only an insured would have a stake in unearned premiums. The statute thus draws no distinction between claimants and insureds for purposes of asserting an unpaid claim. This understanding of the statutory language is entirely consistent with section 375.785.4(1)(b), RSMo 1986, which places MIGA in the place of the insurer to the extent of the insurer's obligations on covered claims. If the now-insolvent American Mutual had remained solvent, its policy would have paid the full amount of Haven's liability under these facts.

Finding no basis in the statute's language to support its position, MIGA advances a policy argument. MIGA claims that its reading more effectively carries out the entire thrust of the statutory scheme by which MIGA is to provide an injured party a recovery for actual economic damages. MIGA argues that to read the statute to permit an insured to seek recovery for an unpaid claim from MIGA would result in different liability levels for MIGA depending upon whether the injured claimant sought to recover directly from MIGA or whether the insured sought reimbursement from MIGA. This case illustrates MIGA's point: Because all but $47,160.94 of Barrett's claim remained unpaid after he received workers' compensation benefits, MIGA would only have to pay Barrett that amount had he sought recovery directly from MIGA for his unpaid claim. However, because Havens, the insured, sought recovery of its unpaid claim, MIGA's exposure depends on the amount Havens paid the injured person.

Policy arguments, while useful in the face of an ambiguous statute, are of no benefit when the statute is not ambiguous. The disparity upon which MIGA hangs its argument is not a function of the uncertainty of the statutory language, but of an apparent legislative indifference to disparate outcomes depending upon the party that seeks recovery from MIGA for an unpaid claim.

We hold, therefore, that an insured may seek recovery from MIGA for an unpaid claim the insured has paid as a result of its insurer's insolvency. Here, Havens paid $515,000.00 to Barrett. The trial court erred in limiting its judgment in favor of Havens to $47,160.94.

■ This holding does not mean, however, as Havens hopes, that it is entitled to the full $515,000.00 it paid Barrett. Section 375.785.4(1)(a), RSMo 1986, limits MIGA's liability on a covered claim to $300,000.00 less the $200.00 deductible. It makes no difference if Havens purchased two separate insurance policies from American Mutual because MIGA's responsibility extends only to the single "covered claim" that forms the basis of the insured's liability. In this case, while the covered claim is the sum total of Havens' monetary obligation to Barrett arising out of the injuries he received on October 27, 1986, MIGA is obligated to pay only $299,800.00 under section 375.785.4(1)(a), RSMo 1986.

## III.

The judgment of the trial court is reversed and the cause is remanded with directions to enter a judgment in favor Havens Steel Company and against the Missouri Insurance Guaranty Association in the amount of $299,800.00.

BENTON, C.J., and LIMBAUGH, COVINGTON, WHITE and HOLSTEIN, JJ., and RIEDERER, Special Judge, concur.

PRICE, J., not sitting.