**STATE ex rel. McDONALD'S CORPORATION and C & S Marshfield, Inc., Relators,**

v.

**The Honorable Sandra C. MIDKIFF, Respondent.**

**State ex rel. McDonald's Corporation and Kris Davison, Inc., Relators,**

v.

**The Honorable Ann Mesle, Respondent.**

**Nos. SC 87856, SC 87855.**

Supreme Court of Missouri,
En Banc.

June 26, 2007.

---

Aaron I. Mandel, Jeffrey J. Brinker, Gary P. Paul, Clayton, for Relators.

Kathleen M. Hagen, Henri J. Watson, Kansas City, for Respondent.

## ORIGINAL PROCEEDINGS IN PROHIBITION

LAURA DENVIR STITH, Judge.

Relators McDonald's Corporation and C & S Marshfield, Inc., are defendants in a tort suit pending in Jackson County. Relator McDonald's Corporation and Kris Davison, Inc., are defendants in another tort suit also pending in Jackson County. Neither C & S Marshfield, Inc., nor Kris Davison, Inc., can be found in Jackson County; their offices and operations are in Webster and Taney Counties, respectively.

Relators in both cases filed motions for change of venue that were denied by respondent judges. Relators filed petitions for extraordinary relief, and this Court issued its preliminary writ in both cases. This Court consolidates these cases for purposes of its opinion because they present an identical question of law: do the McDonald's restaurants operated by franchisees in Jackson County constitute an office or an agent for the transaction of the usual and customary business of their franchisor, relator McDonald's Corporation, when McDonald's Corporation itself does not sell McDonald's products or own franchises but is exclusively engaged in licensing franchise rights to entities that wish to become McDonald's franchisees and in leasing or sub-leasing real estate on which they will conduct their McDonald's franchise business.

Because this Court finds that the McDonald's restaurants in Jackson County are not offices or agents for the transaction of McDonald's Corporation's usual and customary business, the preliminary writs are made absolute.

## I. FACTUAL & PROCEDURAL BACKGROUND.

In July 2001, both child-plaintiffs became ill with E. coli infections after consuming allegedly tainted food, one child at a McDonald's in Webster County and the other child at a McDonald's in Taney County. Each child-plaintiff developed severe and potentially deadly complications and was treated at Children's Mercy Hospital in Jackson County, where each later developed kidney failure and had to receive dialysis.

The parents in both cases filed multi-count petitions in Jackson County Circuit Court. Each suit named two parties as defendants: the national franchisor, McDonald's Corporation, and the individual franchisee that operates the McDonald's restaurant where the particular child-plaintiff ate—in one case, C & S Marshfield, Inc., in the other case, Kris Davison, Inc. (collectively, "franchisee-defendants"). These two franchisee-defendants are Missouri corporations with all their offices, agents, and operations in Webster and Taney Counties, respectively.

Relator McDonald's Corporation is a Delaware corporation that provides franchisees in Missouri and other states, including the franchisee-defendants and McDonald's franchisees located in Webster, Taney and Jackson Counties, with the right to use the McDonald's name and logo and to sell McDonald's food and other products pursuant to a franchise agreement. McDonald's Corporation often owns or leases the property on which its franchisees operate McDonald's restaurants, and does so in the case of the Jackson County franchisees. McDonald's Corporation does not itself run "company-owned" McDonald's restaurants in Jackson

County or elsewhere.[1] Respondents in both cases nonetheless denied relators' motions for change of venue to Webster and Taney Counties, respectively.[2] Relators now seek writs of prohibition.

## II. STANDARD OF REVIEW.

■ Prohibition is an original proceeding brought to confine a lower court to the proper exercise of its jurisdiction. *State ex rel. Linthicum v. Calvin*, 57 S.W.3d 855, 856–57 (Mo. banc 2001). It is a discretionary writ that only issues "to prevent an abuse of judicial discretion, to avoid irreparable harm to a party, or to prevent exercise of extra-jurisdictional power." *Id.* at 857. When venue is improper, prohibition lies to bar the trial court from taking any further action, except to transfer the case to a proper venue. *State ex rel. Green v. Neill*, 127 S.W.3d 677, 678 (Mo. banc 2004).

## III. DISCUSSION

The sole issue presented is whether venue is proper in Jackson County. "Venue in Missouri is determined solely by statute." *State ex rel. Rothermich v. Gallagher*, 816 S.W.2d 194, 196 (Mo. banc 1991). The applicable statute for suits solely against a corporate defendant or defendants provides two permissible venues— either where the cause of action accrued or where defendant has an office or agent for transaction of its usual and customary business. Sec. 508.040, RSMo 2000.[3]

### A. McDonald's Restaurants in Jackson County Are Not Offices for the "Usual and Customary Business" of McDonald's Corporation.

■ Plaintiffs acknowledge their causes of action accrued in Webster and Taney Counties, respectively, where they purchased McDonald's food and became ill. They were not customers of any McDonald's franchise in Jackson County. Plaintiffs further acknowledge that the franchisee-defendants have restaurants only in their home counties and have neither an office nor an agent in Jackson County.

Plaintiffs base venue in Jackson County on their contention that the franchisor, McDonald's Corporation, has an office or agent for the transaction of its usual and customary business there. In support, they note that each McDonald's restaurant in Jackson County operates pursuant to a franchise agreement with McDonald's Corporation and that the land on which each McDonald's restaurant in Jackson County operates is either owned or leased by McDonald's Corporation. Plaintiffs contend that such ownership, coupled with the control that McDonald's Corporation, as franchisor, exercises over its franchisees, makes each McDonald's restaurant in Jackson County a separate "office" for transaction of the usual and customary business of McDonald's Corporation even though the franchisees that sold the food

1. Its wholly-owned subsidiary, McDonald's Restaurants of Missouri, does operate a few McDonald's restaurants in Jackson County. No attempt has been made to pierce the corporate veil, however, so as to show that it is McDonald's Corporation itself that operates any McDonald's restaurant in Jackson County.

2. In No. SC87856, respondent entered an order denying transfer that expressly found that the Jackson County McDonald's restaurants were offices of McDonald's Corporation. In No. SC87855, respondent denied the motion to transfer without explanation.

3. The legislature amended the venue statutes and repealed section 508.040 effective August 28, 2005, but since this case was filed before that date, the pre-amendment statute governs. All subsequent references are to RSMo 2000, unless otherwise noted.

to the child-plaintiffs do not do business in Jackson County.

Plaintiffs cite no authority for the proposition that owning and leasing real property in a community makes each piece of land owned an "office" for the purposes of venue, and this Court declines to so hold. The legislature did not make the ownership of real estate a basis for venue in tort cases, although it demonstrated it knew how to do so when it provided that cases involving the title of real estate should be brought where the real estate can be found. Sec. 508.030. The legislature failed similarly to designate real estate ownership as grounds for venue against a corporate defendant under section 508.040.

■ To accept plaintiffs' argument would mean that any corporate landlord in Missouri would be subject to venue in any county where it owns land regardless of the relationship of the land to the case. For McDonald's Corporation, and any similar franchisor, this would subject them to suit in each county in which they have a franchisee even if the suit has no relationship to that forum. This would not provide a "convenient, logical, and orderly forum for the resolution of disputes," which is the "primary purpose of Missouri's venue statutes." *State ex rel. Elson v. Koehr*, 856 S.W.2d 57, 59 (Mo. banc 1993). As stated in rejecting a similar claim regarding a Domino's pizza franchise, "[i]t is difficult to find that purpose served by allowing suits with no connection with the forum or the residents of the forum to be brought in the forum." *State ex rel. Domino's Pizza, Inc. v. Dowd*, 941 S.W.2d 663, 667 (Mo.App.W.D.1997). Such

a result would be inconsistent with the logic that adheres in venue determinations.[4] Ownership of real estate where a franchisee conducts business does not convert that real estate into an "office" of the franchisor.

### B. McDonald's Restaurants in Jackson County are Not Agents for the "Usual and Customary Business" of McDonald's Corporation.

■ Plaintiffs alternatively argue that, even if the individual McDonald's restaurants in Jackson County are not themselves offices of their franchisor, McDonald's Corporation, the individual franchisees are the *agents* of their franchisor. In *State ex rel. Ford Motor Co. v. Bacon*, 63 S.W.3d 641, 642 (Mo. banc 2002), this Court reaffirmed that Missouri applies a clear three-part test for determining whether a party is an agent of another. First, the principal must have the right to control the conduct of the agent with respect to matters entrusted to the agent. *Id.* Second, an agent must be a fiduciary of the principal. *Id.* Third, the agent must be able to alter legal relationships between the principal and a third party. *Id.* The absence of any one of these three elements defeats a claim that agency exists. *State ex rel. Bunting v. Koehr*, 865 S.W.2d 351, 353 (Mo. banc 1993).

The Court will assume, without deciding, that plaintiffs could show that, as a franchisor, McDonald's Corporation has a right to control certain conduct of its franchisees related to the running of their franchises

---

**4.** It should be noted that this is not a case where the plaintiffs have filed suit in a random forum. In one case, the plaintiffs are residents of Jackson County, and in both cases, the child-plaintiffs received medical treatment in Jackson County, and McDonald's Corporation does, as noted, own real estate there. But, while such contacts may suffice to establish personal jurisdiction, sec. 506.500.1, that does not mean that the county is an appropriate venue for the suit. *State ex rel. DePaul Health Center v. Mummert*, 870 S.W.2d 820, 822 (Mo. banc 1994).

and that these franchisees are in a fiduciary relationship with their franchisor. But there is no evidence of the third critical element of agency: the ability of the franchisees to alter the legal relationship between McDonald's Corporation and a third party. It was the very lack of such an ability to change the legal relationships of the parent that led this Court to conclude that Ford Credit was not an agent under Missouri law in *Ford Motor Co.*, 63 S.W.3d at 644. That same analysis applies here.

Plaintiffs disagree, pointing repeatedly to evidence that the franchisees enter into contracts with third-parties to purchase McDonald's products and speculating that there will be evidence that the franchise agreement requires McDonald's franchisees to buy certain types of meats and other raw ingredients from approved vendors. Plaintiffs argue that these contracts affect the legal relationships between third parties and McDonald's Corporation. But such contracts would affect only the relationship of the *franchisees* with third parties. What is required is proof that the franchisee can alter the relationship of its *franchisor*, McDonald's Corporation, with third parties.

Plaintiffs note, however, that they timely sought a sample of the franchise agreement between McDonald's Corporation and its Jackson County franchisees, but they had not been provided with it prior to respondents' rulings below. They say that, at a minimum, this Court should remand so that they can obtain that agreement and see if it contains any provisions giving franchisees the right to alter the legal relationships of third parties with their franchisor.

Such a provision would seem to be at odds with the nature of a franchise relationship, in which the franchisor extracts promises from the franchisee in return for the right to sell the franchisor's product, rather than vice versa. *See State ex rel. Domino's Pizza, Inc.*, 941 S.W.2d at 665–67 (evaluating franchise agreement and rejecting claim that Domino's pizza franchisee was agent of franchisor); Roger D. Blair & Francine LaFontaine, *Understanding the Economics of Franchising & the Laws that Regulate it*, 26 Franchise L.J. 55, 55 (Fall 2006) (describing the nature of a franchise relationship).

This Court need not resolve this issue, for even were the as-yet-unexamined franchise agreement to give individual franchisees some authority to alter their franchisor's legal relationships with non-parties to the franchise agreement, it would not turn these franchisees into agents for transaction of McDonald's Corporation's "usual and customary business" as required by section 508.040. *See State ex rel. Webb v. Satz*, 561 S.W.2d 113, 114 (Mo. banc 1978) (noting that the agent under section 508.040 must be "of the specified type"). "The legislature has imposed no limitation on the term 'agent' except that the agent must be engaged in the 'usual and customary business' of the principal." *State ex rel. Elson*, 856 S.W.2d at 62. For this reason, in determining whether the presence of a party within a county is sufficient to provide a basis for venue under section 508.040, courts distinguish between agents and agents for the "usual and customary business" of the defendant.

■ Applying this principle, it is well-settled that a registered agent for service of process "is not an agent within the meaning of the [venue] statute." *State ex rel. Coca Cola Bottling of Mid–America v. Gaertner*, 681 S.W.2d 445, 447 (Mo. banc 1984) overruled on other grounds by *DePaul Health Center v. Mummert*, 870 S.W.2d 820, 822 (Mo. banc 1994). This is not because a registered agent is not an "agent" of the defendant corporation, but because a registered agent is not an agent

for the "usual and customary business" of the defendant. "The scope of [a registered agent's] agency is to receive and transmit notices and process. It does not transact any of the usual or customary business of its clients." *State ex rel. Whaley v. Gaertner*, 605 S.W.2d 506, 507 (Mo. App. E.D.1980).

Application of this principle has similarly led courts to hold that a newspaper reporter is not an agent for the transaction of the newspaper's usual and customary business, *Litzinger v. Pulitzer Pub. Co.*, 356 S.W.2d 81 (Mo.1962); an independent adjuster hired by an insurance company "is not an agent of relator within the meaning of [section] 508.040," *State ex rel. Cameron Mut. Ins. Co. v. Koehr*, 850 S.W.2d 374, 376 (Mo.App. E.D.1993); a defendant ad litem is not an agent for the defendant corporation's usual and customary business, *State ex rel. Etter Inc. v. Neill*, 70 S.W.3d 28 (Mo.App. E.D.2002); and an insurance salesman is not an agent of an insurance company for service of process, *State ex rel. MFA Mut. Ins. Co. v. Rooney*, 406 S.W.2d 1, 3 (Mo. banc 1966).

This case thus turns on whether the "transaction of the usual and customary business" of relator McDonald's Corporation is: (a) operating restaurants that serve Big Macs, Happy Meals, Quarter Pounders, Filets–o–Fish, and so forth to the public, as plaintiffs contend; or (b) licensing to third parties the ability to serve Big Macs, Happy Meals, Quarter Pounders, Filets–o–Fish, etc., to the public, as relators contend. The record establishes that McDonald's Corporation itself does not operate any restaurants in Jackson County. There are some Missouri McDonald's restaurants, including three in

Jackson County, that operate through McDonald's Restaurants of Missouri, a wholly-owned subsidiary of McDonald's Corporation, but the separate nature of these two corporations (despite their consolidated ownership) underscores that McDonald's Corporation itself is no longer in the business of owning and operating restaurants. Although McDonald's Corporation owns the right to make Big Macs and to sell them to the public under the allure of the golden arches, the corporation exists today to license that right to third parties. The "usual and customary business" of McDonald's Corporation, therefore, is to license franchise rights to entities that wish to become franchisees and to lease or sub-lease to them the real estate on which these franchisees will operate McDonald's restaurants.

Plaintiffs do not contend that the franchise agreement would establish that the franchisees are agents for the purpose of selling franchise rights or leasing real estate to other franchisees. Indeed, the entire purpose of franchise law is to separate the franchisor from the day-to-day running of the actual business, which is the duty of the franchisee. William L. Killion, *Franchisor Vicarious Liability–The Proverbial Assault on the Citadel*, 24 Franchise L.J. 162, 165 (Winter 2005) ("In exchange for its capital investment and assumption of the risk of loss, the franchisee obtains a right to use a business system and the opportunity to maximize its profits."). While the franchisee and franchisor share a community of interest, these shared interests do not mean that the "usual and customary business" transacted by the franchisee and the franchisor are the same.[5] *See State ex rel. Domino's Pizza,*

---

**5.** If the franchisor were in the business of providing food to the public itself through corporate-owned and operated restaurants in addition to franchisees, then the analysis of its "usual and customary business" could be different. *See* Roger D. Blair & Francine LaFontaine, *Understanding the Economics of Franchising & the Laws that Regulate it*, 26

*Inc.,* 941 S.W.2d at 666–67 (noting, in discussion of whether franchisee is fiduciary, that franchisee and franchisor share "mutual interest[s]" but "the conduct of [the franchisees'] business is primarily for their benefit, not [the franchisor]").

Therefore, even were the franchise agreement to establish that the franchisees are agents of McDonald's Corporation for some purposes, because there is no claim that they are agents of McDonald's Corporation for licensing purposes, plaintiffs could not prove that the franchisees are agents for the "customary and usual business" of McDonald's Corporation.

■ Plaintiffs finally contend that this result is inconsistent with the policy of "broadly subjecting corporations to suit." *Ball v. American Greetings Corp.,* 752 S.W.2d 814, 825 (Mo.App. W.D.1983), quoting, *State ex rel. Pagliara v. Stussie,* 549 S.W.2d 900, 903 (Mo.App. E.D.1977). "Policy arguments, while useful in the face of an ambiguous statute, are of no benefit when the statute is not ambiguous." *Havens Steel Co. v. Mo. Property & Cas. Ins. Guar. Ass'n,* 956 S.W.2d 906, 909 (Mo. banc 1997). Section 508.040 unambiguously provides that suits against corporations may be properly brought in three kinds of places: where the corporation has an office for the transaction of its usual and customary business; where the corporation has an agent for the transaction of its usual and customary business; and where the cause of action accrued. Jackson County is not among those places.

Franchise L.J. 55, 55 n. 2 (Fall 2006) (noting that "firms involved in franchising typically engage in dual distribution, i.e., they vertically integrate some units and franchise the others"). But the evidence establishes that relator McDonald's Corporation does not operate restaurants except through franchisees.

## IV. CONCLUSION

For the reasons given above, the preliminary writs of prohibition are made absolute.

WOLFF, C.J., LIMBAUGH and RUSSELL, J.J., and BATES, Sp.J., concur.

WHITE, J., dissents in separate opinion filed; TEITELMAN, J., concurs in opinion of WHITE, J.

RONALD L. WHITE, Judge, dissenting.

I respectfully dissent. In my view, on this factual record, McDonald's fails to overcome the presumption in favor of the trial court's ruling.[1] McDonald's bears the burden of showing that the trial court exceeded its jurisdiction.[2] The franchise agreement that the plaintiffs seek to discover could shed light on whether the franchise location constitutes an office and whether the franchisee is an agent of McDonald's. If the terms of the agreement support McDonald's position, McDonald's need only have produced the document to satisfy its burden of proof. Absent such evidence, the trial court's determination was not clearly erroneous. The high standard of review for extraordinary relief calls for deference to the trial court's determination.

1. *Hill v. Kendrick,* 192 S.W.3d 719, 720 (Mo. App.2006).

2. *Id.*