# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-2334

_____

Affordable Communities of Missouri

*Plaintiff - Appellant*

v.

Federal National Mortgage Association, a federally chartered corporation

*Defendant - Appellee*

EF&A Capital Corporation; EF&A Funding LLC

*Defendant*s

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: March 12, 2013
Filed: May 9, 2013

_____

Before MURPHY, SMITH, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

Affordable Communities of Missouri purchased the Jefferson Arms Apartments, a senior independent living complex in St. Louis, Missouri, in 1993. In 1999 Affordable refinanced its debt on Jefferson Arms with a loan from Eichler,

Fayne, and Associates (EFA) which would penalize Affordable if it voluntarily prepaid the debt. EFA sold the loan to Federal National Mortgage Association (Fannie Mae) but continued to service it. In 2005 the city of St. Louis threatened to condemn Jefferson Arms, and Affordable sold the property to another developer. EFA demanded that Affordable pay the prepayment penalty. Affordable disagreed that it was subject to the penalty, and it sued EFA and Fannie Mae for negligent misrepresentation, breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. After Affordable settled its claims again EFA, Fannie Mae moved to dismiss. The district court granted Fannie Mae's motion, concluding that EFA had not acted as Fannie Mae's agent in originating the loan and that the loan documents unambiguously authorized the prepayment penalty. Affordable appeals. We affirm in part, reverse in part, and remand for further proceedings.

I.

Affordable is a Nevada limited partnership that owned the Jefferson Arms Apartments, a senior independent living center in St. Louis, and its adjoining parking garage. Jefferson Arms had been built at the beginning of the twentieth century, and after purchasing it in 1993 Affordable invested significant funds renovating and modernizing the property.

In August 1998 Affordable contacted EFA seeking to refinance its existing secured debt on Jefferson Arms. EFA originates loans secured by mortgages on multifamily properties like Jefferson Arms, operating exclusively under Fannie Mae's delegated underwriting and servicing (DUS) program. Since federal law prohibits Fannie Mae from originating loans, see 12 U.S.C. § 1719(a)(2)(B), it operates the DUS program to purchase loans on the secondary mortgage market. These loans were originated and serviced by lenders such as EFA. Fannie Mae imposes certain requirements on loans originated through the DUS program, and originators share with Fannie Mae the associated risk of loss on any such loans.

-2-

Representatives of EFA and Affordable met to discuss refinancing. The EFA representative explained that the DUS program penalized borrower prepayment because that would cause Fannie Mae to forfeit expected interest income on the loan. The EFA representative gave Affordable the choice between one of two prepayment penalties. One was a "yield maintenance" option which would impose a onetime fee upon prepayment. The second was a "defeasance" option which would allow Fannie Mae to use prepayment funds to purchase securities at the prevailing rate for mortgages on multifamily apartment buildings, and then to substitute those assets for its lien on Jefferson Arms. Both prepayment penalties would be calculated to ensure that Fannie Mae would collect no less if Affordable repaid the debt early. According to Affordable, the EFA representative indicated that "the defeasance option should cost a borrower less than the yield maintenance option." Based on this advice, Affordable selected the defeasance option.

EFA agreed to lend Affordable approximately $8 million, and in April 1999 they executed loan documents consisting of a "Fannie Mae Multifamily Note" and a "Fannie Mae Multifamily Security Instrument." The security instrument incorporated by reference an exhibit describing the defeasance provision, which stated that the penalty would not apply in the case of "a prepayment occurring as the result of any . . . condemnation award under the Security Instrument." Rather, in the event of condemnation, any proceeds from the sale would be transferred to Fannie Mae to satisfy the debt, and Affordable would not be liable for any additional fees. After executing the loan, EFA sold and assigned it to Fannie Mae in the secondary mortgage market.

In 2005, the city of St. Louis threatened to use its eminent domain power to acquire Jefferson Arms through condemnation. The city suggested that as an alternative to condemnation, Affordable could convey Jefferson Arms to another developer who would rehabilitate the property. Affordable agreed to sell Jefferson Arms to the new developer, noting in its sale documents that the property was being

transferred in lieu of the threatened condemnation. Affordable then wrote to EFA to inform it of the sale and seek a release of its lien on the property. Since the sale had occurred in lieu of condemnation, Affordable contended that it was covered by the "condemnation award" exception in the loan documents and did not trigger the prepayment penalty.

Fannie Mae disagreed that the sale fell within any exception to the prepayment penalty, and EFA informed Affordable on behalf of Fannie Mae that the lien would not be released until the defeasance process was complete. To complete the process, Affordable was required to pay a "defeasance deposit" equal to one percent of the outstanding loan and to give Fannie Mae notice of the defeasance so it could purchase securities to substitute for the mortgage on Jefferson Arms. Fannie Mae determined that the appropriate substitute collateral was a Fannie Mae investment security with an interest rate of less than five percent. Since the interest rate on Affordable's loan was more than seven percent, Affordable was obligated to make up the difference. In July 2006 Affordable completed the defeasance process, obtained a release of the lien on Jefferson Arms, and sold the property to the new developer. Affordable alleges that it paid Fannie Mae approximately $500,000 through the defeasance process in addition to the outstanding loan balance.

In March 2011 Affordable sued EFA and Fannie Mae in state court for negligent misrepresentation, breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. Affordable contended that EFA had negligently misrepresented that the defeasance provision would cost less than the yield maintenance option, and that Fannie Mae was vicariously liable for the misrepresentation because EFA had acted as Fannie Mae's agent when it originated the loan. Affordable also argued that EFA and Fannie Mae had breached the security instrument by enforcing the prepayment penalty because the sale had occurred in lieu of condemnation, and such a sale was exempted under the defeasance provision of the loan documents. It sought to recover the $500,000 cost of the defeasance process.

-4-

The suit was removed to federal district court, and Affordable settled its claims against EFA in May 2012. Fannie Mae then moved to dismiss Affordable's claims against it. It argued that Affordable's negligent misrepresentation claim should be dismissed because Affordable had failed to plead facts showing that EFA was acting as Fannie Mae's agent when the alleged misrepresentation occurred. Fannie Mae also contended that Affordable's claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment should be dismissed because the loan documents had unambiguously authorized the prepayment penalty. The district court agreed with Fannie Mae and granted its motion to dismiss on all counts.

Affordable appeals, arguing that the district court erred by concluding that there had been no agency relationship between Fannie Mae and EFA when the loan was executed and by determining that the loan documents exempted only prepayments that were the result of an actual, not merely threatened, condemnation.

II.

We review the grant of a motion to dismiss de novo, taking the facts alleged in the complaint as true. Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010). To survive a motion to dismiss, a complaint "need not include detailed factual allegations," C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347, 591 F.3d 624, 629 (8th Cir. 2010), but it must contain "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plausibility standard requires a plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## A.

Affordable first argues that the district court erred by concluding that EFA had not acted as Fannie Mae's agent when it originated the loan secured by Jefferson Arms. The parties agree that Missouri law governs. Three elements are required to demonstrate an agency relationship under Missouri law: (1) the agent has the power "to alter legal relationships between the principal and a third party," (2) the agent is "a fiduciary of the principal," and (3) the principal has "the right to control the conduct of the agent with respect to matters entrusted to the agent." State ex rel. McDonald's Corp. v. Midkiff, 226 S.W.3d 119, 123 (Mo. 2007). The "absence of any one of the three elements of agency defeats a claim that agency exists." State ex rel. Bunting v. Koehr, 865 S.W.2d 351, 353 (Mo. 1993). Affordable bears the burden of proving an agency relationship, and when there is no conflicting evidence the existence of such a relationship is a question of law. Jennings v. City of Kansas City, 812 S.W.2d 724, 732–33 (Mo. Ct. App. 1991).

The district court concluded that Affordable's complaint had not alleged sufficient facts to satisfy any of the three elements of an agency relationship, and it dismissed Affordable's negligent misrepresentation claim against Fannie Mae. It first determined that EFA had no power to alter the legal relationship between Affordable and Fannie Mae because "there was no legal relationship between [Affordable] and Fannie Mae at all until Fannie Mae purchased" the loan. It similarly concluded that a fiduciary relationship could not have existed between EFA and Fannie Mae before the loan was purchased. The district court finally determined that Affordable failed to demonstrate that Fannie Mae had the right to control EFA, because the fact that "Fannie Mae mandated the form of the loan documents . . . does not tend to establish that Fannie Mae could control EFA's conduct before Fannie Mae purchased the [l]oan."

-6-

We agree that Affordable did not establish the first element of an agency relationship because it failed to plead facts demonstrating that EFA had the power "to alter [the] legal relationship[] between" Fannie Mae and Affordable when the alleged misrepresentation occurred. Midkiff, 226 S.W.3d at 123. Affordable pled in its complaint that Fannie Mae imposed "certain rules and requirements" for loans it would purchase under the DUS program, and that "Fannie Mae purchase[d] loans originated from EFA and serviced by EFA." Affordable's complaint did not allege, however, that Fannie Mae was obligated to purchase EFA's loan on Jefferson Arms because it complied with Fannie Mae's specifications. We are also unpersuaded by Affordable's "labels and conclusions," Twombly, 550 U.S. at 555, that "[a]t all relevant times, . . . EFA acted as an agent of Fannie Mae" and that an EFA representative had negotiated the loan terms "on behalf of . . . Fannie Mae." We conclude that Affordable failed to plead facts demonstrating the first element of an agency relationship under Missouri law, and we thus need not consider the other elements. See Koehr, 865 S.W.2d at 353.

The facts as pled also do not create a "reasonable inference" that Fannie Mae is violating federal law, Iqbal, 556 U.S. at 678, as would be the case if EFA were acting as its agent. Fannie Mae was established as a "secondary market facilit[y] for residential mortgages" to provide "stability," "liquidity," and other "ongoing assistance" to the secondary mortgage market. 12 U.S.C. § 1716(1), (3). Congress intended Fannie Mae's operation to impose "a minimum of adverse effect upon the residential mortgage market and minimum loss to the Federal Government," id. § 1716(5), and it accordingly cabined Fannie Mae's role to the secondary mortgage market by prohibiting it from originating loans, see id. § 1719(a)(2)(B). Viewing EFA as Fannie Mae's agent here would make Fannie Mae a loan originator and would render the DUS program in violation of federal law. Such a conclusion is at odds with congressional intent and the record in this case, and we decline to adopt it. See Mendrala v. Crown Mortg. Co., 955 F.2d 1132, 1140–41 (7th Cir. 1992).

B.

Affordable next argues that the district court erred by concluding that the loan documents unambiguously required it to complete the defeasance process. It contends that the "condemnation award" exclusion in the defeasance provision exempted its sale in lieu of threatened condemnation from the prepayment penalty, and that Fannie Mae breached its agreement with Affordable by imposing the prepayment penalty. To show that Fannie Mae breached under Missouri law, Affordable must prove: (1) "the existence and terms of a contract," (2) that it "performed or tendered performance pursuant to the contract," (3) that Fannie Mae breached the contract, and (4) damages. Keveney v. Mo. Military Acad., 304 S.W.3d 98, 104 (Mo. 2010). Only the third element is disputed here.

To determine whether Fannie Mae breached, we look to the terms of the loan documents. The "cardinal rule" of contract interpretation is to "ascertain the intention of the parties and to give effect to that intention." J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club, 491 S.W.2d 261, 264 (Mo. 1973). We must construe a contract "as a whole so as to not render any terms meaningless," favoring "a construction that gives a reasonable meaning to each phrase and clause and harmonizes all provisions." State ex rel. Riverside Pipeline Co., L.P. v. Pub. Serv. Comm'n, 215 S.W.3d 76, 84 (Mo. 2007). Contract interpretation is a question of law unless the provision is ambiguous. Weitz Co. v. MH Washington, 631 F.3d 510, 524 (8th Cir. 2011) (applying Missouri law). Ambiguity is viewed in the context of the "entire written agreement," Shaw Hofstra & Assocs. v. Ladco Dev., Inc., 673 F.3d 819, 826 (8th Cir. 2012) (citation omitted) (applying Missouri law), and "exists when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract," Peters v. Emp'rs Mut. Cas. Co., 853 S.W.2d 300, 302 (Mo. 1993).

Three sections of text in the loan documents are relevant to the issue of ambiguity. First, the defeasance provision in Schedule B to the note specifies that

Affordable "shall not have the right voluntarily to prepay any of the principal of this Note," but that this restriction "shall not apply to a prepayment occurring as a result of the application of any insurance proceeds or condemnation award under the Security Instrument." Second, paragraph 10 of the note, entitled "Voluntary and Involuntary Prepayments," employs identical language and is referenced by Schedule B. Third, paragraph 20 of the security instrument is entitled "Condemnation" and requires that Affordable "promptly notify Lender of any action or proceeding relating to any condemnation or other taking, or conveyance in lieu thereof, of all or any part of the Mortgaged Property, whether direct or indirect (a 'Condemnation')." Paragraph 20 also provides that Affordable "transfers and assigns" to Fannie Mae "any award or payment with respect to . . . any Condemnation, or any conveyance in lieu of Condemnation."

The district court determined that the "condemnation award" exemption in Schedule B was unambiguous, and that it applied only to an actual condemnation award and not to a sale conducted in lieu of condemnation. It first reasoned that Schedule B had not employed the capitalized defined term "Condemnation" from paragraph 20 of the security instrument, which would have included a "conveyance in lieu thereof." It further concluded that "the plain meaning of the phrase 'condemnation award' . . . refers to a formal condemnation award, in this case, under the applicable Missouri statutes and procedures." Since Affordable had transferred Jefferson Arms under threat of condemnation, but without an actual condemnation award, the district court concluded that Affordable had failed to state a breach of contract claim against Fannie Mae.

The term "condemnation award" in Schedule B is made ambiguous by duplication and "indistinctness" of the various condemnation provisions throughout the loan documents. Peters, 853 S.W.2d at 302. The same language in Schedule B regarding prepayment resulting from a "condemnation award" is used in paragraph 10 of the note. Paragraph 10 compares the effect of "Voluntary and Involuntary

-9-

Prepayments" on the penalty provision. Section (a) of paragraph 10 states that a prepayment penalty will apply if Affordable "voluntarily prepay[s] all . . . of the unpaid principal balance" (emphasis added). Section (b) recognizes an exception for "any prepayment occurring as a result of the application of any insurance proceeds or condemnation award." Paragraph 10 thus creates "uncertainty" as to whether the parties intended to exempt from the penalty provision all involuntary prepayments or merely to exempt prepayments resulting from formal condemnation awards. Peters, 853 S.W.2d at 302. Since a sale in lieu of condemnation does not occur voluntarily, a reading of "condemnation award" to include such a sale would harmonize Schedule B and paragraph 10 of the note. See Riverside Pipeline Co., 215 S.W.3d at 84.

Nor does the plain language of Schedule B require that only a formal condemnation award be exempted. Schedule B excludes prepayments arising from "the application of any . . . condemnation award under the Security Instrument," which indicates that the term is to be construed according to meaning given in the security instrument. Although "Condemnation" rather than "condemnation award" appears as a defined term in the security instrument, we decline to view capitalization as dispositive. We also note that the defined terms to which the district court assigned great weight are inconsistently applied throughout the loan documents. Immediately after defining the term "Condemnation" to include "a conveyance in lieu thereof," for example, paragraph 20 of the security instrument states that Affordable assigns to Fannie Mae "any payment with respect to . . . any Condemnation, or any conveyance in lieu of Condemnation."

Reading "condemnation award" in Schedule B to carry the meaning ascribed to "Condemnation" in paragraph 20 would give "reasonable meaning to each phrase and clause and harmonize[] all provisions." Riverside Pipeline Co., 215 S.W.3d at 84. It would also make little sense to distinguish between a condemnation award and a sale in lieu of condemnation since both arise from the same set of involuntary circumstances.

-10-

Viewing the language in the context of "the entire written agreement," <u>Shaw Hofstra & Assocs.</u>, 673 F.3d at 826, and considering the likely "intention of the parties," <u>J.E. Hathman</u>, 491 S.W.2d at 264, we conclude that the agreement is ambiguous as to whether "condemnation award" includes a sale in lieu of condemnation. We therefore reverse the dismissal of Affordable's breach of contract claim against Fannie Mae and remand to the district court.

Affordable also challenges the district court's dismissal of its claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment. The district court dismissed both claims after determining that the prepayment penalty had been unambiguously authorized by the loan documents. We affirm, but on other grounds. See <u>Liberty Mut. Fire Ins. Co. v. Scott</u>, 486 F.3d 418, 422 (8th Cir. 2007). To state a claim for breach of the implied covenant of good faith and fair dealing, Affordable was required to plead facts showing that Fannie Mae had acted in bad faith. See <u>Koger v. Hartford Life Ins. Co.</u>, 28 S.W.3d 405, 412 (Mo. Ct. App. 2000). Affordable pled only that Fannie Mae "materially breached the covenant of good faith and fair dealing in the Note and the Security Instrument" without pointing to any specific facts to support its claim. Such "conclusory statements" without appropriate "factual content" are insufficient to survive a motion to dismiss, <u>Iqbal</u>, 556 U.S. at 678, and we therefore affirm the district court's dismissal of that claim.

We also agree with the district court that Affordable's unjust enrichment claim should be dismissed. Unjust enrichment is "an equitable remedy based on the concept of a quasi-contract," <u>Reyner v. Crawford</u>, 334 S.W.3d 168, 174 (Mo. Ct. App. 2011), and a plaintiff may not "recover under both an express contract and unjust enrichment," <u>Chem Gro of Houghton, Inc. v. Lewis Cnty. Rural Elec. Coop. Ass'n</u>, No. 2:11CV93 JCH, 2012 WL 1025001, at *3 (E.D. Mo. Mar. 26, 2012) (unpublished) (citing <u>Banner Iron Works, Inc. v. Amax Zinc Co.</u>, 621 F.2d 883, 889 (8th Cir. 1980)). Rather, if a "plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply,

for the plaintiff's rights are limited to the express terms of the contract."  Howard v. Turnbull, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010).  Affordable accepts that the dispute in this case is contractual, indicating in its brief that "the sole issue on appeal is whether the Loan Documents are unambiguous."  We agree that the resolution of this case depends on the district court's interpretation of the condemnation provision on remand.  Equitable relief is therefore unavailable, Howard, 316 S.W.3d at 436, and the district court did not err in dismissing Affordable's unjust enrichment claim.

## III.

We accordingly affirm the district court's dismissal of Affordable's claims for negligent misrepresentation, breach of the covenant of good faith and fair dealing, and unjust enrichment.  We reverse its dismissal of Affordable's breach of contract claim and remand for further proceedings consistent with this opinion.

_____